# Illinois Official Reports

## Appellate Court

---

### *People v. Theus*, 2016 IL App (4th) 160139

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. BYRON D. THEUS, Defendant-Appellee. |
| District & No. | Fourth District<br>Docket No. 4-16-0139 |
| Filed | September 22, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Macon County, No. 14-CF-153; the Hon. Timothy J. Steadman, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Jay Scott, State's Attorney, of Decatur (Patrick Delfino, David J. Robinson, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.<br><br>James H. Waller, of Waller Legal Services, of Bloomington, for appellee. |
| Panel | JUSTICE TURNER delivered the judgment of the court, with opinion.<br>Justices Harris and Steigmann concurred in the judgment and opinion. |

**OPINION**

¶ 1 In February 2014, the State charged defendant, Byron D. Theus, with three drug-related offenses. The trial court granted defendant's motion to suppress after several hearings.

¶ 2 On appeal, the State argues the trial court erred in granting defendant's motion to suppress. We reverse and remand.

## I. BACKGROUND

¶ 4 In February 2014, the State charged defendant by information with three drug-related offenses following a traffic stop in March 2011. In count I, the State alleged defendant committed the offense of controlled-substance trafficking with a prior conviction for unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401.1(a) (West 2010); see also 720 ILCS 570/401(a)(2)(C), 408(a) (West 2010)) in that he knowingly brought 400 grams or more, but less than 900 grams, of cocaine into the state with the intent to manufacture or deliver it. In count II, the State alleged defendant committed the offense of unlawful possession of a controlled substance with intent to deliver with a prior conviction for unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401(a)(2)(C), 408(a) (West 2010)) in that he knowingly and unlawfully possessed with the intent to deliver 400 grams or more, but less than 900 grams, of a substance containing cocaine, a controlled substance. In count III, the State alleged defendant committed the offense of unlawful possession of a controlled substance with a prior conviction for unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/402(a)(2)(C), 408(a) (West 2010)) in that he knowingly and unlawfully had in his possession 400 grams or more, but less than 900 grams, of a substance containing cocaine, a controlled substance.

¶ 5 In April 2014, defendant filed a motion to suppress evidence. Therein, defendant alleged he was a passenger in a car driven by Shawn Barbee, who was pulled over for improper lane usage. A search of the vehicle resulted in the discovery of cocaine in the trunk of the vehicle, and both defendant and Barbee were arrested. Defendant alleged the officer who pulled over the vehicle could not have reliably observed a traffic violation and thus no probable cause to stop and/or search the vehicle existed.

¶ 6 In May 2015, the trial court conducted a hearing on the motion to suppress. Decatur police detective Chad Larner testified he was on duty on March 28, 2011, when he was traveling in a northeasterly direction on Illinois Route 48 in Macon County. He observed a gold-colored Chevrolet Malibu traveling on the road where "it splits into two lanes." He then saw the vehicle "make an abrupt lane change" without activating its turn signal. Larner radioed Macon County sheriff's deputy Dale Pope about the failure-to-signal violation.

¶ 7 Deputy Pope testified he did not observe the traffic violation but he did stop the vehicle. He told the occupants he pulled over the vehicle due to a lane violation.

¶ 8 Shawn Barbee testified he was traveling with defendant on March 28, 2011. He stated he drove on Route 48 and "just continued straight into the lane that [he] was in." Following closing arguments, the trial court took the matter under advisement.

¶ 9 In its written order, the trial court found the stop was predicated on the alleged violation of section 11-804 of the Illinois Vehicle Code (625 ILCS 5/11-804 (West 2010)). After reviewing

a video exhibit and a photo exhibit of the roadway in question, the court found the road is "poorly marked."

> "There is virtually no warning—in the form of a sign adjacent to the roadway or markings on the pavement itself—indicating that roadway turns from one to two northbound lanes. It appears that any abrupt movement of a vehicle would most likely be attributable to the fact that the lane markings abruptly change without warning. *** The law recognizes that deviations in the movement of a vehicle may be attributable to road conditions. *** The vehicle was not turned. There was no movement made from one marked lane to another. There is no evidence suggesting that movement of the vehicle was made without reasonable safety. Under these unique circumstances the court finds that there was no duty to signal and therefore no reasonable grounds to believe that [section] 11-804 had been violated."

The court granted the motion to suppress.

¶ 10    In June 2015, the State filed a motion to reconsider and to present additional evidence. The State argued Detective Larner's objectively reasonable belief, although perhaps a mistake of fact, that there was a requirement to signal when the lane branched from one to two lanes provided reasonable suspicion or probable cause to believe a traffic violation had occurred when Barbee failed to signal. The State further alleged it was prohibited from presenting evidence regarding an ongoing narcotics investigation that provided reasonable suspicion to make the stop.

¶ 11    In July 2015, the trial court held a hearing on the motion to reconsider. The court noted the Illinois Supreme Court had handed down an opinion in *People v. Gaytan*, 2015 IL 116223, 32 N.E.3d 641, in May 2015. *Gaytan* relied on the United States Supreme Court's decision in *Heien v. North Carolina*, 574 U.S. ___, 135 S. Ct. 530 (2014), which dealt with mistakes of law.

> "The question becomes under [the] facts and circumstances in this particular case as previously heard by the Court during the course of the Motion to Suppress, was it objectively reasonable for, in this case I believe it was Detective Larner, to believe that this statute, [section] 11-804 had been violated for a lack of a signal being activated at this particular portion of the roadway. Because the statute is ambiguous, it is this Court's belief that under *Heien* and *Gaytan*, that the previous ruling was incorrect. That there was a mistake of law based upon a statute which was genuinely ambiguous."

The court granted the State's motion to reconsider and denied defendant's motion to suppress.

¶ 12    In August 2015, defendant filed a motion to reconsider the denial of his motion to suppress. Defendant argued section 11-804 of the Vehicle Code is unambiguous and Detective Larner's belief that section 11-804 required defendant to use his turn signal was not a reasonable mistake of law.

¶ 13    On September 14, 2015, the trial court issued its ruling in a docket entry. The court found section 11-804 is "somewhat awkwardly written." The court stated that in reading subsection 11-804(d) in conjunction with subsection 11-804(a), "it does appear, however, that activation of a turn signal is required in three specific situations, none of which apply to the facts preceding the traffic stop in this case." In finding section 11-804 is unambiguous under *Gaytan*, the court allowed defendant's motion to reconsider.

¶ 14 On September 28, 2015, the State filed a motion to present additional evidence and to reconsider the trial court's ruling on the motion to suppress. Therein, the State alleged it had additional evidence regarding the ongoing investigation into defendant's drug-trafficking activities. The State claimed it was prohibited from presenting this evidence as an alternative justification for the stop and asked the trial court to allow it do so. The court allowed the State to adduce additional evidence regarding whether officers had reasonable grounds or probable cause to believe the vehicle or occupants had been or were committing a criminal offense at the time the stop was effectuated.

¶ 15 In February 2016, the trial court conducted a hearing on the State's motion. Decatur police detective David Dailey testified he was involved in defendant's traffic stop on March 28, 2011. He stated an investigation of defendant had begun in March 2009. At that time, the investigation involved "numerous" controlled drug purchases from Tony Barbee at a Decatur residence, where it was determined the water service was in defendant's name. The police executed a search warrant and recovered over 100 grams of controlled substances inside a garbage bag in a vacant lot next to the residence. Dailey stated the garbage bag appeared to be a part of a bag found inside the residence.

¶ 16 Dailey testified he became familiar with Kimothy Owens in July 2009. Owens had been arrested and transferred to federal court when he sought to cooperate with Dailey's investigation. Owens stated he was defendant's cousin or second cousin and said defendant was responsible for bringing large quantities of cocaine from Tennessee to Decatur. In February 2010, a confidential source purchased cocaine from defendant.

¶ 17 In March 2011, Hertz Rent a Car contacted the Decatur police department and indicated a female had rented a vehicle and defendant was listed as a secondary driver. Dailey stated drug dealers often use vehicles rented in someone else's name, which can "provide another reason for the drugs being in the car" other than the person operating it. Rental cars are also used to avoid forfeiture. A global-positioning-system device was placed in the vehicle that the female and defendant had rented. Dailey saw a woman and defendant pick up the vehicle on March 15, 2011. The next day, Dailey monitored the location of the vehicle and observed defendant as the only occupant. On March 28, 2011, Dailey received notification that the vehicle had left Macon County. A Pana, Illinois, police officer observed two black males in the vehicle. Dailey stated the vehicle ultimately ended up in Tennessee, where it stayed for less than two hours. It then took a different route back to Decatur. Dailey monitored the vehicle and conducted the traffic stop in question at approximately 11:30 p.m. Dailey questioned Barbee about the nature of his trip, and Barbee stated he had gone to Tennessee for a couple of days to attend a funeral. When asked what clothes he wore to the funeral since there were no clothes in the vehicle, Barbee stated he had rented a tuxedo.

¶ 18 Following arguments, the trial court reiterated that it found no reasonable grounds to believe section 11-804 had been violated. In considering the additional information, the court noted the last direct evidence of defendant's involvement in drug activity was the controlled buy in February 2010, over a year before the traffic stop. The court found the police department's information was "too remote" to establish reasonable grounds that defendant had contraband in the rental vehicle on March 28, 2011. The court denied the State's motion. Thereafter, the State filed a certificate of impairment. This appeal followed.

¶ 19                                   II. ANALYSIS

¶ 20      The State argues the trial court erred in ruling the stop of the vehicle in which defendant was a passenger was not authorized by a reasonable belief that the driver had committed a traffic offense. We agree.

¶ 21                              A. Standard of Review

¶ 22      On review of a motion to suppress, this court is presented with mixed questions of law and fact. *People v. McQuown*, 407 Ill. App. 3d 1138, 1143, 943 N.E.2d 1242, 1246 (2011).

>          "In reviewing a trial court's ruling on a motion to suppress, the trial court's findings of historical fact are reviewed only for clear error, giving due weight to any inferences drawn from those facts by the fact finder, and reversal is warranted only when those findings are against the manifest weight of the evidence. [Citation.] However, a reviewing court remains free to undertake its own assessment of the facts in relation to the issues and may draw its own conclusions when deciding what relief should be granted. [Citation.] A trial court's ultimate legal ruling as to whether suppression is warranted is subject to *de novo* review." *People v. Hackett*, 2012 IL 111781, ¶ 18, 971 N.E.2d 1058.

¶ 23                              B. The Fourth Amendment

¶ 24      The fourth amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. Similarly, the Illinois Constitution affords citizens with "the right to be secure in their persons, houses, papers[,] and other possessions against unreasonable searches [and] seizures." Ill. Const. 1970, art. I, § 6. Our supreme court has interpreted the search-and-seizure clause of the Illinois Constitution in a manner consistent with the United States Supreme Court's fourth-amendment jurisprudence. See *People v. Caballes*, 221 Ill. 2d 282, 335-36, 851 N.E.2d 26, 57 (2006).

¶ 25      "When a police officer observes a driver commit a traffic violation, the officer is justified in briefly detaining the driver to investigate the violation." *People v. Ramsey*, 362 Ill. App. 3d 610, 614, 839 N.E.2d 1093, 1097 (2005). A stop of a vehicle and the detention of its occupants constitutes a "seizure" under the fourth amendment. *People v. Jones*, 215 Ill. 2d 261, 270, 830 N.E.2d 541, 549 (2005); see also *Brendlin v. California*, 551 U.S. 249, 257-58 (2007); *People v. Harris*, 228 Ill. 2d 222, 231, 886 N.E.2d 947, 954 (2008) (stating "a passenger is seized for fourth amendment purposes when the vehicle in which he is riding is subjected to a traffic stop"). Thus, "vehicle stops are subject to the fourth amendment's reasonableness requirement" and are analyzed under the principles set forth in *Terry v. Ohio*, 392 U.S. 1 (1968). *People v. Close*, 238 Ill. 2d 497, 505, 939 N.E.2d 463, 467 (2010). "A police officer may conduct a brief, investigatory stop of a person where the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *Hackett*, 2012 IL 111781, ¶ 20, 971 N.E.2d 1058. "If reasonable suspicion is lacking, the traffic stop is unconstitutional and evidence obtained as a result of the stop is generally inadmissible." *Gaytan*, 2015 IL 116223, ¶ 20, 32 N.E.3d 641.

¶ 26      To be constitutionally permissible, an "investigatory stop must be justified at its inception." *Close*, 238 Ill. 2d at 505, 939 N.E.2d at 467. " '[T]he police officer must be able to

point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' " *Close*, 238 Ill. 2d at 505, 939 N.E.2d at 467 (quoting *Terry*, 392 U.S. at 21). "In judging the police officer's conduct, we apply an objective standard: 'would the facts available to the officer at the moment of the seizure *** "warrant a man of reasonable caution in the belief" that the action was appropriate?' " *Close*, 238 Ill. 2d at 505, 939 N.E.2d at 467 (quoting *Terry*, 392 U.S. at 21-22).

¶ 27 A police officer's objectively reasonable mistake, whether of fact or law, may provide the reasonable suspicion necessary to justify a traffic stop. In *Heien*, 574 U.S. at ___, 135 S. Ct. at 536, the United States Supreme Court held an officer's objectively reasonable mistake of fact or law may provide the reasonable suspicion necessary to justify a traffic stop, stating:

> "Reasonable suspicion arises from the combination of an officer's understanding of the facts and his understanding of the relevant law. The officer may be reasonably mistaken on either ground. Whether the facts turn out to be not what was thought, or the law turns out to be not what was thought, the result is the same: the facts are outside the scope of the law. There is no reason, under the text of the Fourth Amendment or our precedents, why this same result should be acceptable when reached by way of a reasonable mistake of fact, but not when reached by way of a similarly reasonable mistake of law."

The Court cautioned, however, that "[t]he Fourth Amendment tolerates only *reasonable* mistakes, and those mistakes—whether of fact or of law—must be *objectively* reasonable." (Emphases in original.) *Heien*, 574 U.S. at ___, 135 S. Ct. at 539.

¶ 28 After *Heien* was decided, our supreme court confronted whether a traffic stop based on a mistake of law constitutes a violation of the fourth amendment or the Illinois Constitution. In *Gaytan*, the court found a vehicle stop will not violate the fourth amendment if the officer's mistake of law was objectively reasonable. *Gaytan*, 2015 IL 116223, ¶ 48, 32 N.E.3d 641. We note "[a] judicial decision that establishes a new constitutional rule applies to all criminal cases pending on direct review." *People v. Davis*, 2014 IL 115595, ¶ 36, 6 N.E.3d 709. As *Heien* and *Gaytan* were decided while defendant's case was still proceeding through the trial court, the principles of law set forth therein are relevant in determining whether the evidence should have been suppressed in this case.

¶ 29                              C. Section 11-804 of the Vehicle Code

¶ 30 Section 11-804 of the Vehicle Code (625 ILCS 5/11-804 (West 2010)) provides, in part, as follows:

> "(a) No person may turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in Section 11-801 or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety. No person may so turn any vehicle without giving an appropriate signal in the manner hereinafter provided.
>
> * * *
>
> (d) The electric turn signal device required in Section 12-208 of this Act must be used to indicate an intention to turn, change lanes or start from a parallel parked position but must not be flashed on one side only on a parked or disabled vehicle or

flashed as a courtesy or 'do pass' signal to operators of other vehicles approaching from the rear. However, such signal devices may be flashed simultaneously on both sides of a motor vehicle to indicate the presence of a vehicular traffic hazard requiring unusual care in approaching, overtaking and passing."

¶ 31    In this case, Barbee was driving northeast toward Decatur on Illinois Route 48, a two-lane road with traffic traveling in both directions. Although not produced on the date of the traffic stop, a video of the road from Detective Larner's squad car was submitted at the suppression hearing and has been included in the record on appeal. If a vehicle was traveling in the same direction as Barbee, the driver would have a solid white line on his right indicating the presence of the shoulder. To his left, he would have a solid or broken yellow line, indicating a passing or no-passing zone, dividing the middle of the road. As Route 48 nears the U.S. Route 51 overpass, the lane in which Barbee was driving widens, thereby becoming two lanes. Thus, the solid white line remained on his right, broken white lines appeared in front of him to delineate two lanes, and a median appeared on his left.

¶ 32    Both the State and defendant agree section 11-804(d) of the Vehicle Code requires a driver to use his or her turn signal when changing lanes. The State argues it was necessary for Barbee to signal at this stretch of roadway when the road split from one lane to two lanes. Defendant, on the other hand, argues Barbee did not change lanes at all.

¶ 33    Here, Detective Larner concluded Barbee committed a traffic violation for failing to signal. If his interpretation was mistaken, Barbee could not have been convicted for his failure to signal—even if Larner's belief was objectively reasonable—because Barbee's failure to signal would not have been a violation of section 11-804. However, Larner's same mistaken interpretation could justify stopping Barbee's vehicle if the interpretation was objectively reasonable. See *Heien*, 574 U.S. at ___, 135 S. Ct. at 540 (stating "just because mistakes of law cannot justify either the imposition or the avoidance of criminal liability, it does not follow that they cannot justify an investigatory stop").

¶ 34    We find Larner's belief that section 11-804 of the Vehicle Code required Barbee to signal at this juncture of the roadway was objectively reasonable under the circumstances. The plain text of the statute requires a signal when changing lanes. There is no ambiguity in that requirement. However, it does not address whether it applies to lane divisions and mergers, and thus an ambiguity arises when applying the law to the spot of Route 48 where Barbee is alleged to have committed the infraction. Here, one lane became two lanes, requiring Barbee to pick one. See *Mahaffey v. State*, 364 S.W.3d 908, 913 (Tex. Crim. App. 2012) (stating " 'changing lanes' requires the existence of more than one lane"). He could not continue driving straight; otherwise he would be straddling the dotted white line separating the two lanes. Barbee testified he moved into the left lane. Thus, the solid white line would no longer have been on his right. Instead, the dotted white line delineating the two new lanes would be. Larner stated the vehicle made "an abrupt lane change" without activating its signal.

¶ 35    The Supreme Court pointed out "an officer may 'suddenly confront' a situation in the field as to which the application of a statute is unclear—however clear it may later become." *Heien*, 574 U.S. at ___, 135 S. Ct. at 539. In the case *sub judice*, it is not at all clear whether section 11-804 of the Vehicle Code required Barbee to signal here. We have found no published decisions addressing the question of whether a turn signal is required when a lane divides into two lanes. However, even if defendant is correct about section 11-804—that a turn signal is not

required at this spot of Route 48—it would not render the traffic stop here illegal. The result is the same whether Larner was right or wrong about the law.

¶ 36     While Barbee may have had a defense to a prosecution for violating the statute, Larner's belief that his failure to signal violated the Vehicle Code was not objectively unreasonable. We find the traffic stop in this case was justified at its inception, either because Barbee committed a traffic violation or because Detective Larner made a reasonable mistake of law. The outcome is the same either way. As we hold the stop was valid under the fourth amendment, we find the trial court erred in granting defendant's motion to suppress.

¶ 37                              III. CONCLUSION

¶ 38     For the reasons stated, we reverse the trial court's judgment and remand for further proceedings.

¶ 39     Reversed and remanded.