NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210509-U

NO. 4-21-0509

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 14, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Vermilion County |
| SEYON HAYWOOD, | ) | No. 17DT54 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Charles D. Mockbee IV, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices Harris and Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court did not err in denying defendant's motion to suppress evidence.

¶ 2        After a May 2021 jury trial, defendant, Seyon Haywood, was found guilty of

driving under the influence (DUI) (625 ILCS 5/11-501 (West 2020)), and the trial court

sentenced him to 18 months' probation. Defendant appeals, arguing the court erred by denying

his motion to suppress evidence obtained when he allegedly was unlawfully seized by the police.

According to defendant, the arresting officer lacked a reasonable, articulable suspicion to initiate

the stop. We affirm.

¶ 3                                I. BACKGROUND

¶ 4        In May 2017, defendant was charged via a citation and complaint with one count

of DUI (625 ILCS 5/11-501(a)(2) (West 2016)). In the sworn report attached to the citation and

complaint, the arresting officer alleged he observed the following grounds to believe defendant violated the DUI statute: "Failure to signal when required, odor of alcoholic based beverages on breath, admitted to drinking, [bloodshot] eyes."

¶ 5                                    A. Motion to Suppress Evidence

¶ 6            In March 2020, defendant filed a motion to suppress evidence. In the motion, defendant alleged he was denied his constitutional right to be free from unreasonable searches and seizures (U.S. Const., amend. IV) because law enforcement lacked a sufficient basis to initiate the traffic stop leading to defendant's arrest. Specifically, defendant alleged the arresting officer's stated reason for the traffic stop was "directly contradicted by the dash camera video footage." Accordingly, defendant argued, any evidence obtained as a result of the allegedly illegal stop should be excluded from evidence in this case.

¶ 7            In January 2021, the trial court held a hearing on defendant's motion to suppress. Defendant first called Officer Kyle Butcher, who testified as follows. On May 26, 2017, at around 1 a.m., Officer Butcher was on duty with the Danville Police Department driving northbound on Harmon Avenue in a patrol car. Officer Butcher observed a silver Chevrolet Malibu turn onto Harmon in the same direction he was traveling. Officer Butcher claimed the driver of the Chevrolet, who he later identified as defendant, failed to signal at least one hundred feet prior to turning onto Harmon. Officer Butcher agreed this turn was not recorded by his dashboard camera and the turn signal was on the opposite side of the car from Officer Butcher's vantage point. Despite this observation, Officer Butcher did not pursue defendant at that time.

¶ 8            Officer Butcher continued in the same direction behind defendant's car until West Fairchild Street, where he observed defendant turn right. Officer Butcher later turned right onto West Woodbury Street, and defendant made another right onto Robinson Street traveling

southbound. Officer Butcher encountered defendant at the intersection of Robinson and Woodbury, where he observed defendant's car's rear registration light was not illuminated. At this point, Officer Butcher initiated a traffic stop. Defendant then played the video footage from Officer Butcher's dashboard camera, which was later identified as Defendant's Exhibit A and admitted into evidence.

¶ 9    Officer Butcher agreed the video footage was a true and accurate representation of what he observed that night, "other than the parts [he previously stated] were not included on it," *i.e.*—the first turn. In the video, at the beginning of the stop, Officer Butcher can be heard informing defendant his rear registration light is out. When prompted by the court, Officer Butcher testified the rationale for the stop was "the totality of the circumstances," including (1) defendant's failure to signal prior to turning onto Harmon, (2) defendant's rear registration light not being illuminated, and (3) defendant turning to travel southbound on Robinson when he had previously been traveling northbound. When asked about the quality of the video, Officer Butcher testified it was "very poor compared to how [his] eyes actually are during the night." While not clear in the video, Officer Butcher testified he was able to determine with his eyes defendant's rear registration light was not illuminated and any light in that area depicted in the video was simply "reflect."

¶ 10    Defendant introduced Exhibit D1, a still photograph of defendant's car taken from Officer Butcher's dashboard camera video footage of the stop, which was admitted into evidence. Exhibit D2, which was also admitted, was prepared by defense counsel and depicted "zoomed in" images of defendant's car from Exhibit D1. The quality of Exhibits D1 and D2 is dark, grainy, and blurred. In the images, defendant's license plate is obscured by a solid swath of light spanning the length of the rear of defendant's car between the taillights.

¶ 11          Defendant argued Officer Butcher lacked a reasonable articulable suspicion to stop defendant because defendant's alleged failure to signal prior to turning on Harmon was not captured on the dashboard camera footage and the officer "was not in a position from [hundreds] of feet away to be able to make a determination *** as to whether or not [defendant] failed to signal within 100 feet of that intersection." Defendant emphasized the failure to signal was not even the officer's initial basis for the stop. Instead, Officer Butcher did not decide to pull defendant over until he encountered defendant at the intersection of Woodbury and Robinson and claimed to observe the rear registration light was not illuminated. Finally, defendant argued Officer Butcher was clearly "mistaken" regarding the registration light, as the dashboard camera footage showed the light was illuminated. Accordingly, defendant asserted there was no reasonable basis for the stop, and any evidence obtained from the stop should be suppressed.

¶ 12          The trial court denied defendant's motion. The court rejected defendant's theory Officer Butcher would not have been able to observe defendant's failure to signal based upon the distance between his patrol car and defendant's car. The court reasoned because Officer Butcher included defendant's alleged failure to signal before turning on Harmon in his original arrest report, it had "been his recollection from the get-go" and was a valid basis to stop defendant. The court added the fact Officer Butcher let defendant go initially "doesn't diminish the occurrence" and it was not until he crossed paths with defendant the second time that he effected the stop based upon the registration light issue.

¶ 13                              B. Defendant's Jury Trial

¶ 14          In May 2021, defendant's case proceeded to a jury trial. At the beginning of trial, defendant requested to represent himself, which the trial court allowed after admonishing defendant. The court appointed defendant's previous attorney as standby counsel.

¶ 15        The State called Officer Butcher as its sole witness. Officer Butcher testified

substantially in conformity with his testimony at the suppression hearing, noting he stopped

defendant's car around 1 a.m. on May 26, 2017. Officer Butcher testified he observed

defendant's failure to signal before turning onto Harmon and that defendant's registration light

was out. Officer Butcher testified he found it unusual defendant turned around and began

traveling in the opposite direction after he first observed him turn onto Harmon.

¶ 16        After stopping defendant, Officer Butcher observed defendant drop his insurance

card and struggle to remove his driver's license from his wallet when prompted. Officer Butcher

testified he noticed defendant's eyes were "glassy" and "bloodshot," and his breath smelled of

alcohol. Defendant admitted to drinking two beers that evening. Based on Officer Butcher's

observations, he believed defendant may have been intoxicated and asked defendant to exit his

car. Officer Butcher then conducted "preliminary assessments" to determine if defendant was

impaired. When asked to count backwards from 69 to 42, defendant counted "down past 42 to

40" and "went up and back down again where he again passed 42." When asked to state the

alphabet from E to R, defendant stated the entire alphabet from A to Z.

¶ 17        Officer Butcher then conducted three standard field sobriety tests: the horizontal

gaze nystagmus (HGN), the walk-and-turn, and the one-leg stand. During the HGN test, Officer

Butcher observed "a lack of smooth pursuit" in both of defendant's eyes, as well as "sustained

nystagmus"—*i.e.*, involuntary jerking of the eyes. Officer Butcher testified the observation of

four HGN test clues amounted to a "significant indicator of consumption of alcohol," and

defendant displayed six clues. During the one-leg stand, defendant "put his foot down twice" and

"lifted his arm for balance," which were two further indicators of impairment. Finally, during the

walk-and-turn test, defendant "fell off balance before starting," "stepped off line on his first nine

steps," and "miss[ed] heel to toe," which were three further indicators of impairment. Officer Butcher then arrested defendant and took him to the public safety building, where defendant declined to take a breathalyzer test.

¶ 18        The State introduced the video footage from Officer Butcher's dashboard camera, which was admitted into evidence. During cross-examination, defendant introduced the blown-up photograph of the registration light on his car, which was previously admitted at the suppression hearing as Exhibit D2. Following Officer Butcher's testimony, the State rested, and defendant moved for a directed verdict. The trial court denied the motion. Defendant presented no evidence, and following closing arguments, the jury found defendant guilty of DUI.

¶ 19        Defendant filed a motion for a new trial, arguing, *inter alia*, the trial court erred when it denied his motion to suppress evidence. The trial court denied defendant's motion and sentenced him to 18 months' probation. The court further ordered defendant to complete (1) an alcohol evaluation and treatment and (2) 200 hours of community service.

¶ 20        On September 7, 2021, defendant filed a notice of appeal in sufficient compliance with Illinois Supreme Court Rule 606 (eff. Mar. 12, 2021). Accordingly, this court has jurisdiction of defendant's appeal under Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013).

¶ 21                              II. ANALYSIS

¶ 22        On appeal, defendant argues the trial court erred when it denied his motion to suppress. Specifically, defendant argues Officer Butcher's belief defendant had committed a traffic violation was "mistaken," and he therefore lacked reasonable suspicion to stop defendant. We disagree.

¶ 23                         A. Searches and Seizures

¶ 24        A citizen has the right to be free from unreasonable searches and seizures under both the United States and Illinois Constitutions. U.S. Const., amends. IV, XIV; Ill. Const. 1970, art. I, § 6. "The cornerstone of the fourth amendment is reasonableness, which seeks to balance the interest in according discretion in enforcing the law for the community's protection and safeguarding against invasions of citizens' privacy." *People v. Hill*, 2020 IL 124595, ¶ 19, 162 N.E.3d 260. Under the fourth amendment to our federal constitution, reasonableness normally requires a warrant supported by probable cause. *People v. Love*, 199 Ill. 2d 269, 275, 769 N.E.2d 10, 14 (2002).

¶ 25        Our supreme court has stated:

> "Pursuant to *Terry*, a police officer may conduct a brief, investigatory stop of a person where the officer reasonably believes that the person has committed, or is about to commit, a crime. [*Terry v. Ohio*, 392 U.S. 1, 22 (1968).] The officer must have a 'reasonable, articulable suspicion' that criminal activity is afoot. [Citation.] Although 'reasonable, articulable suspicion' is a less demanding standard than probable cause, an officer's suspicion must amount to more than an 'inchoate and unparticularized suspicion or "hunch" ' of criminal activity. [Citation.] The investigatory stop must be justified at its inception, and the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the governmental intrusion upon the constitutionally protected interests of the private citizen. [Citation.] In judging the officer's conduct, we apply an objective standard and consider, 'would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action

taken was appropriate?' " *People v. Timmsen*, 2016 IL 118181, ¶ 9, 50 N.E.3d 1092.

The standard established in *Terry* has been codified into Illinois law at section 107-14 of the Code of Criminal Procedure of 1963 (725 ILCS 5/107-14 (West 2020)).

¶ 26    "Stopping a vehicle and detaining its occupants constitutes a seizure under the fourth amendment to the United States Constitution." *People v. Wofford*, 2012 IL App (5th) 100138, ¶ 22, 969 N.E.2d 383. Generally, "[a] stop based on an officer's observation of a traffic violation is valid at its inception." *People v. Simpson*, 2015 IL App (1st) 130303, ¶ 26, 29 N.E.3d 546. As relevant to the issues presented here, section 11-804(b) of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/11-804(b) (West 2020)) requires "[a] signal of intention to turn right or left, change lanes, otherwise turn a vehicle *** must be given continuously during not less than the last 100 feet traveled by the vehicle within a business or residence district." The Vehicle Code further requires "[e]ither a tail lamp or a separate lamp shall be so constructed and placed as to illuminate with a white light a rear registration plate." 625 ILCS 5/12-201(c) (West 2020).

¶ 27    When reviewing the denial of a defendant's motion to suppress evidence, this court applies a two-part standard of review. *Timmsen*, 2016 IL 118181, ¶ 11. A trial court's factual findings will only be disturbed if they are against the manifest weight of the evidence. *Timmsen*, 2016 IL 118181, ¶ 11. " 'A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented.' " *People v. Mott*, 389 Ill. App. 3d 539, 543, 906 N.E.2d 159, 163 (2009) (quoting *People v. Deleon*, 227 Ill. 2d 322, 332, 882 N.E.2d 999, 1005 (2008)). We accord great deference to the trial court's factual and credibility

- 8 -

determinations, as the court is in a better position to judge the credibility of the witnesses. *People v. Nolan*, 59 Ill. App. 3d 177, 186, 375 N.E.2d 445, 452 (1978). However, we apply a *de novo* standard of review to the trial court's ultimate legal conclusion to deny the motion to suppress. *Timmsen*, 2016 IL 118181, ¶ 11.

¶ 28                                    B. Defendant's Case

¶ 29                                    1. *Failure to Signal*

¶ 30        First, we disagree with defendant's assertion Officer Butcher could not have observed defendant's failure to signal before turning onto Harmon. Defendant notes his turn signal, if activated, "would have been on the opposite side of the car from Butcher's line of sight as he was traveling down Harmon." However, this does not foreclose the possibility Officer Butcher could have observed defendant's alleged failure to signal through the use of the various mirrors on his patrol car or through a change in his vantage point as he traveled through the intersection. Also, the fact the turn occurred on a residential street lined with trees and parked cars would not have necessarily obstructed Officer Butcher's view of defendant's car.

¶ 31        While these facts impacted the credibility and weight to be assigned to Officer Butcher's testimony, they did not render the officer's version of events impossible or improbable. Moreover, the trial court was in the best position to observe Officer Butcher's demeanor and found his testimony to be credible and consistent throughout the proceedings. *Nolan*, 59 Ill. App. 3d at 186.

¶ 32        We find the court's determination Officer Butcher observed defendant's failure to signal prior to turning on Harmon was not against the manifest weight of the evidence, and this observation constituted reasonable suspicion to stop defendant. *Simpson*, 2015 IL App (1st)

130303, ¶ 26 ("A stop based on an officer's observation of a traffic violation is valid at its inception.").

¶ 33                                    2. *Registration Light*

¶ 34        Second, assuming *arguendo* Officer Butcher could not have observed defendant's car's signal light, we disagree with defendant's assertion Officer Butcher would have lacked reasonable suspicion to stop defendant because the officer "mistakenly" believed defendant's registration light to be out.

¶ 35        Defendant contends Exhibits D1 and D2—the still photographs of defendant's car taken from Officer Butcher's dashboard camera—established defendant's registration light was not, in fact, out. We disagree. First, the quality of the photographs was poor, as they appeared dark, grainy, and blurred. The area around defendant's license plate is obscured by a strip of light spanning between the taillights. This makes it virtually impossible to determine, from the photograph alone, whether the registration light itself was illuminated, or if the plate was illuminated by the reflection of defendant's taillights, Officer Butcher's patrol car's lights, or some combination of the two. Officer Butcher specifically testified he was able to distinguish between an illuminated registration light and "reflect" and informed defendant his registration light was out during the stop. Once again, the trial court was in the best position to observe Officer Butcher's demeanor, and the court found his testimony regarding defendant's registration light to be credible. See *Nolan*, 59 Ill. App. 3d at 186.

¶ 36        Moreover, "a police officer's objectively reasonable mistake, whether of fact or law, may provide reasonable suspicion necessary to justify a traffic stop." *People v. Theus*, 2016 IL App (4th) 160139, ¶ 27, 64 N.E.3d 61. Even assuming Officer Butcher *was* mistaken, we find nothing in the record supporting a finding his mistake was objectively unreasonable.

¶ 37    We conclude the court's determination Officer Butcher observed defendant's registration light was not illuminated was not against the manifest weight of the evidence as the opposite conclusion is not clearly apparent. Thus, the officer's observation pertaining to defendant's taillight constituted reasonable suspicion to stop defendant's vehicle.

¶ 38                    3. *Change in Direction*

¶ 39    Because we find Officer Butcher had two bases to support a reasonable suspicion to stop defendant's vehicle, we need not address defendant's argument that his "changing direction" could not have properly been considered as a reason for the stop. Accordingly, we conclude the trial court's denial of defendant's motion to suppress evidence was proper and affirm the trial court's judgment.

¶ 40                    III. CONCLUSION

¶ 41    For the reasons stated, we affirm the Vermilion County circuit court's judgment.

¶ 42    Affirmed.