In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-2686

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

LESHAWN STANBRIDGE,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Central District of Illinois.
No. 14-cr-30020-SEM-TSH-1 — **Sue E. Myerscough**, *Judge*.

ARGUED JANUARY 26, 2016 — DECIDED FEBRUARY 23, 2016

Before WOOD, *Chief Judge*, and BAUER and POSNER, *Circuit Judges*.

BAUER, *Circuit Judge*. LeShawn Stanbridge appeals his conviction for possession of methamphetamine with intent to distribute, 21 U.S.C. § 841(a)(1). The drugs had been found in Stanbridge's car after police in Quincy, Illinois, detained him on the ground that he committed a traffic offense by not signaling continuously for 100 feet before pulling alongside the curb to park. That understanding of Illinois law was

wrong, but the district court decided that the mistake was reasonable and, for that reason, denied Stanbridge's motion to suppress the drugs. We hold that the mistake of law was *not* reasonable, and thus Stanbridge's motion to suppress should have been granted.

## I. BACKGROUND

Stanbridge was walking to his car carrying a duffel bag when two Quincy police officers passed by on patrol. Stanbridge hesitated and looked surprised when he saw the officers, so they circled the block and began shadowing him with the hope of catching him in a traffic violation. After driving just a short distance, Stanbridge activated his right turn signal, pulled to the side of the street, and parked parallel with the curb. Officer Steve Bangert, who was driving, had not witnessed any traffic violation before Stanbridge pulled over, but his partner, Officer Paul Hodges, later reported that Stanbridge had turned left at an intersection without signaling while being followed. Unaware of his partner's observation, Bangert stopped behind Stanbridge and activated his blue flashers, effectively seizing Stanbridge. Bangert did so because Stanbridge had not activated his turn signal 100 feet before pulling to the curb.

Stanbridge had a valid driver's license, but a check for criminal history showed that he "did have priors," prompting Officer Bangert to request a drug-sniffing dog (though Stanbridge's only *drug* conviction was for marijuana possession, 11 years earlier when he was 17). The dog arrived 10 minutes later, and its alert led to the discovery of methamphetamine, marijuana, and pills inside Stanbridge's duffel bag. He was arrested and confessed to acting as a "mid-

dleman" for two suppliers who had trafficked six pounds of methamphetamine in as many months.

Stanbridge was charged with conspiracy to distribute a controlled substance, 21 U.S.C. §§ 846, 841(a)(1), and possession with intent to distribute, *id.* § 841(a)(1). He moved to suppress the evidence derived from the stop, asserting that he was seized unlawfully because he had not committed a traffic violation. The government responded that the police officers had two bases for seizing Stanbridge: He did not activate his turn signal 100 feet before pulling over to park, and he had made a left turn without signaling at all. Video from a dashcam in the officers' patrol car confirms that Stanbridge did not signal for 100 feet before parking, but, the government conceded, the illegal left turn cannot be seen in the video.

At a hearing on Stanbridge's motion to suppress, both police officers testified, and the dashcam video was played. Officer Bangert acknowledged that he had not seen Stanbridge commit a traffic violation before the alleged turn-signal violation when parking. Indeed, Bangert's only justification for detaining Stanbridge was that he had "started to signal after [his car] already started its turn pulling to the curb." Officer Hodges, on the other hand, testified that he had seen Stanbridge turn left at an intersection without signaling; he didn't mention this violation to Bangert when it occurred, he added, because he had assumed that his partner also witnessed the illegal turn.

Stanbridge's car did not come in view of the dashcam until just before he parked. Stanbridge was on a street without

lane markings, with no other traffic in sight (except for the officers' car). But the video does confirm that Stanbridge activated his turn signal just *before* he pulled to the right to park, not contemporaneously with the rightward movement as described by the police officers.

The district court denied Stanbridge's motion in a written order. The court assumed that Officer Hodges had seen Stanbridge make an unsignaled left turn. But that observation, the court reasoned, would have given *Hodges*, not Officer Bangert, probable cause to make a traffic stop:

> Officer Hodges … was not driving the po- lice car and did not initiate the traffic stop. Of- ficer Bangert, as the driver, did, but Officer Bangert testified that he did not see Stan- bridge's left turn without a proper signal. Moreover, both officers testified that Officer Hodges did not tell Officer Bangert about Stanbridge's unsignaled left turn, and Officer Hodges testified that he had assumed that Of- ficer Bangert saw the turn for himself.

Thus, the court concluded, the left turn was irrelevant, and only *Bangert's* explanation for detaining Stanbridge could justify the defendant's seizure. The court opined that the Illinois Vehicle Code is ambiguous (and noted that courts in the state had not offered guidance) concerning whether a driver must signal for 100 feet before pulling to a curb. And, the district court concluded, Bangert's belief "was reasonable, even if it were mistaken," and thus the perceived ambiguity "must be resolved in the Government's favor.

Stanbridge then entered a conditional guilty plea to the count charging him with possessing the methamphetamine in his duffle bag, while reserving the right to challenge on appeal the denial of his motion to suppress. *See* FED. R. CRIM. P. 11(c)(1)A), (B). He was sentenced to 144 months' imprisonment.

## II. DISCUSSION

In this court Stanbridge argues that Illinois law does not require a driver to signal continuously for 100 feet before parking parallel to a curb, and that Officer Bangert's mistake of law on this point was unreasonable and thus cannot be a basis for upholding the seizure. The government counters that Stanbridge's challenge is not properly before us because, according to the government, in briefing this appeal he neglected to contest a second reason given by the district court for denying his motion to suppress. We therefore begin with the government's contention that Stanbridge has committed waiver.

In opposing Stanbridge's motion in the district court, the government asserted that his failure to signal before turning left at an intersection, as seen by Officer Hodges but not captured on the dashcam video, provided a basis for the seizure independent of Stanbridge's actions while parking. On appeal, the government's primary contention is that Stanbridge has waived any challenge to his initial detention by not addressing what the government characterizes as "the district court's unmistakable finding" of probable cause to seize him based on the unsignaled left turn. In his opening brief Stanbridge discusses only Officer Bangert's justification for the

seizure, and thus, the government argues, Stanbridge has left unchallenged an alternative rationale for sustaining his initial detention. This "omission," the government insists, "is fatal to his appeal."

To the contrary, waiver is a problem for the government, not Stanbridge. That is because the government's premise rests entirely on its untenable reading of the district court's ruling. The court's order, in the opening paragraph, does talk about improperly signaled "turns" giving the "officers" probable cause to make a traffic stop. Yet despite these plural references, the court's decision later makes clear that the judge did not accept the government's contention that it could rely on both "turns" to justify the detention of Stanbridge. The government correctly observes that the district court thought that Officer Hodges's observation of Stanbridge turning left at an intersection without signaling provided *Hodges* with probable cause for a traffic stop, but the government omits what the court said next:

> Officer Hodges, however, was not driving the police car and did not initiate the traffic stop. Officer Bangert, as the driver, did, but Officer Bangert testified that he did not see Stanbridge's left turn without a proper signal. Moreover, both officers testified that Officer Hodges did not tell Officer Bangert about Stanbridge's unsignaled left turn, and Officer Hodges testified that he had assumed that Officer Bangert saw the turn for himself.

The district court thus believed that only Officer Bangert, the driver of the patrol car, had effectuated Stanbridge's seizure and thus only his rationale and the facts known to him mattered. In so doing, the district court *rejected* the government's reliance on the unsignaled left turn as a justification for the initial detention.

The government may disagree with the district court's reasoning, but it does not argue in its brief that we should reject that reasoning and view the left turn as an alternative basis for upholding the stop of Stanbridge. By instead misconstruing the court's order and arguing that *Stanbridge* has engaged in waiver, the government has failed to *recognize*, let alone challenge, the district court's rejection of its position that the stop was alternatively justified by the unsignaled left turn. The government, like other litigants, can waive its opportunity to challenge an adverse ruling on an argument presented to the district court. *See United States v. Cherry*, 436 F.3d 769, 772 (7th Cir. 2006) (recognizing that government "inexplicably abandoned reliance" on valid justification for vehicle search by failing to challenge district court's rejection of that ground presented at suppression hearing); *United States v. Wilson*, 390 F.3d 1003, 1009–10 (7th Cir. 2004) (refusing to review factual assertions where government failed to challenge district court's rejection of those same contentions); *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009) (finding waiver where government failed to challenge district court's determination that defendant had standing to bring Fourth Amendment claim). The government has not asked us to reject as unsound the district court's conclusion that only Officer Bangert, not the "team," seized Stanbridge, and that Officer Hodges's observation

cannot be considered. The government's oversight in failing to argue the issue is so large that we conclude it has waived reliance on the left turn as a justification for Stanbridge's seizure.

That leaves Stanbridge's challenge to the sole ground on which the district court did rely: He did not signal for 100 feet before pulling to the curb to park. Section 11-804 of the Illinois Vehicle Code provides:

> When signal required. (a) No person may turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in Section 11-801 or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety. No person may so turn any vehicle without giving an appropriate signal in the manner hereinafter provided.

> (b) A signal of intention to turn right or left when required must be given continuously during not less than the last 100 feet traveled by the vehicle before turning within a business or residence district, and such signal must be given continuously during not less than the last 200 feet traveled by the vehicle before turning outside a business or residence district.

(c) No person may stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided in this Chapter to the driver of any vehicle immediately to the rear when there is opportunity to give such a signal.

(d) The electric turn signal device required in Section 12-208 of this Act must be used to indicate an intention to turn, change lanes or start from a parallel parked position but must not be flashed on one side only on a parked or disabled vehicle or flashed as a courtesy or "do pass" signal to operators of other vehicles approaching from the rear. However, such signal devices may be flashed simultaneously on both sides of a motor vehicle to indicate the presence of a vehicular traffic hazard requiring unusual care in approaching, overtaking and passing.

625 ILCS 5/11-804. Stanbridge disagrees with the district court's belief that this statute is ambiguous concerning the 100-foot minimum signaling distance. Stanbridge is willing to concede that moving from a traffic lane to a curb is a lane change governed by § 11-804(d), but even so, he argues, the statute requires only that a signal "must be used" when changing lanes, not that a signal be used for 100 feet or any other specified distance. In response, the government has abandoned its previous argument that pulling to a curb constitutes a "turn" requiring a 100-foot warning, and instead the government argues that a "driver cannot 'indicate an in-

tention' to change lanes while he is *already* changing lanes," because to do so would fail to give other drivers sufficient notice and defeat the statute's purpose.

We agree with Stanbridge that § 11-804 is *not* ambiguous, and does not require a driver to signal for 100 feet before pulling alongside a curb to park. The minimum signaling distances required by subsection (b) apply only when a driver intends "to *turn* right or left" (emphasis added). And no other subsection includes an explicit command to signal before moving toward a curb to park. As the district court noted, "[i]f the Illinois General Assembly had meant for the signal requirement to apply to a motorist pulling to a stop at the curb under § 11-804(d), it knew how to do so explicitly, as § 11-804(d) clearly requires the use of a turn signal before 'start[ing] from a parallel parked position'." This is a sensible reading of the statute, and the government has not given us reason to think that the legislature intended to require drivers seeking parking in congested urban areas to continuously signal for 100 feet before determining that a possible parking space is not only large enough, but also free of fire hydrants, yellow curbs, and other parking restrictions.

So the only possible relevance of § 11-804 is the requirement in subsection (d) that a signal be used to indicate an intention to "change lanes." "Lane" is not defined (and the Illinois courts have not had occasion to construe the term, especially as applied to an unstriped roadway). But even if moving toward the curb of unstriped pavement to park constitutes "changing lanes," § 11-804(d) requires only that a turn signal "be used." And Stanbridge *did* use his signal, as the government is compelled to acknowledge. What's more,

the dashcam video refutes the government's assertion that Stanbridge activated his turn signal only after pulling toward the curb; the light was on *before* Stanbridge moved to the right.

This does not end our inquiry, however, because a police officer's *objectively reasonable* mistake of law can provide reasonable suspicion for a seizure. *See Heien v. North Carolina*, 135 S. Ct. 530, 534–35, 539–40 (2014) (concluding that police officer's mistaken belief that ambiguous vehicle code required more than one functional brake light was objectively reasonable). The district court concluded that Officer Bangert was objectively reasonable, even if mistaken, in believing that § 11-804 requires motorists to signal for at least 100 feet before pulling to a curb. Rather than defend this conclusion, the government in its brief dismisses as an "academic proposition" Stanbridge's argument that the district court erred.

We view the government's silence as an implicit concession that, as Stanbridge maintains, Officer's Bangert's misunderstanding of § 11-804 was *not* objectively reasonable. The statute isn't ambiguous, and *Hein* does not support the proposition that a police officer acts in an objectively reasonable manner by misinterpreting an *unambiguous* statute. *See United States v. Flores*, 798 F.3d 645, 649–50 (7th Cir. 2015) (concluding that police officer could not reasonably have believed that motorist's use of license-plate frame found on "vast" number of cars violated Illinois statute). The 100-foot requirement in § 11-804(b) unambiguously applies to turns, and nothing more. Bangert simply was wrong about what the provision required, yet "an officer can gain no Fourth

Amendment advantage through a sloppy study of the laws he is duty-bound to enforce." *Hein*, 135 S. Ct. at 539–40.

The government suggests that we disregard whether Officer Bangert acted reasonably and instead declare that Stanbridge violated § 11-804 for a reason unrelated to the 100-foot signaling minimum. In the government's eyes, Stanbridge signaled "too late" and failed to give adequate warning to other drivers. For this proposition the government relies on the requirement in § 11-804(c) that drivers give notice to vehicles directly behind them before suddenly decreasing speed if "there is opportunity to give such a signal." The government also echoes the district court's statement that "the overall purpose of the statute is plainly to regulate the movement of vehicles and to provide notice of that movement to other motorists."

It should suffice to note that this argument wasn't made in the district court and is thus forfeited. *See, e.g., United States v. Dachman*, 743 F.3d 254, 259 (7th Cir. 2014); *Fryer v. United States*, 243 F.3d 1004, 1011–12 (7th Cir. 2001). Anyway, who else was on the road to warn? Once again the dashcam video upends the government's contention; as is plain from that video, the police officers' distant patrol car was the only other vehicle in sight of Stanbridge, and he already was moving slowly when he decided to pull over and park.

### III. CONCLUSION

Stanbridge fully complied with § 11-804. Officer Bangert's contrary belief was not objectively reasonable, and thus the officer's mistake of law cannot justify Stanbridge's

seizure. Accordingly, the denial of the defendant's motion to suppress must be overturned. The judgment of conviction is VACATED, and the case is REMANDED to the district court for further proceedings.