# Illinois Official Reports

## Appellate Court

---

### *People v. Bowden*, 2019 IL App (3d) 170654

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JUSTIN R. BOWDEN, Defendant-Appellee. |
| District & No. | Third District<br>Docket No. 3-17-0654 |
| Filed<br>Rehearing denied | February 11, 2019<br>March 29, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Hancock County, Nos. 17-CF-58, 17-TR-370, 17-TR-371, 17-TR-628, 17-TR-629; the Hon. Rodney G. Clark, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Rachel B. Mast, State's Attorney, of Carthage (Patrick Delfino, David J. Robinson, and Nicholas A. Atwood, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.<br><br>James E. Chadd, Peter A. Carusona, and Amber Hopkins-Reed, of State Appellate Defender's Office, of Ottawa, for appellee. |

JUSTICE CARTER delivered the judgment of the court, with opinion.
Justice Lytton concurred in the judgment and opinion.
Presiding Justice Schmidt dissented, with opinion.


**OPINION**

¶ 1        Defendant, Justin R. Bowden, was arrested for possession of methamphetamine (720 ILCS 646/60(b)(1) (West 2016)) after his person and vehicle were searched following a traffic stop of his vehicle based on defendant's failure to signal a lane change (625 ILCS 5/11-804(d) (West 2016)) and the officer discovering defendant was driving while license suspended (*id.* § 6-303). Defendant filed a motion to suppress evidence, which the trial court granted. The State appealed. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3        At the hearing on defendant's motion to suppress evidence, Officer Brendon Glenn testified that, in the early morning hours of May 11, 2017, he was following defendant's vehicle, in Carthage, Illinois, in the westbound lane of Highway 136. The westbound lane was defined with a solid white fog line on the right and two solid yellow lines on the left. Glenn testified that the single westbound lane of Highway 136 became two lanes that were divided by a white dashed line. Glenn observed that defendant had continued to follow along the right-hand white fog line and crossed over the white dashed line that originated from the right-hand fog line without using a turn signal. Glenn stated, "I think he continued a little bit with the left lane before moving back towards the fog line if I remember correctly." Glenn initiated a traffic stop, discovered defendant's driver's license had been suspended, placed defendant under arrest, and found methamphetamine when searching defendant's person incident to the arrest. Defendant's vehicle was subsequently towed. During an inventory search of defendant's vehicle, additional methamphetamine was found.

¶ 4        On cross-examination, Glenn testified that the juncture of Highway 136 at issue was "a white dashed line that starts at the white fog line on the right-hand side of the westbound lanes that moves out into the center of the roadway as the lane—the single lane splits into two lanes." Glenn testified that there were essentially two fog lines where the single lane splits into two lanes, one solid and one dashed line. Defendant crossed over the white dashed line and proceeded in the right-hand lane without signaling a lane change. By doing so, Glenn believed that defendant violated section 11-804(d) of the Vehicle Code (*id.* § 11-804(d)). Glenn pulled defendant over for failure to signal the lane change because Glenn believed defendant had moved from the left lane into the right lane.

¶ 5        The video of the traffic stop and photographs of the location of the stop were entered into evidence. The trial judge stated, "I will go view the video, and I'll come back." When the trial judge returned, he noted that he had reviewed cases submitted by counsel, the video, and the photographs. The trial judge stated:

"The Court can honestly say that it has probably driven this roadway a thousand times over the course of living in this area. And I don't think any of those times, not only have I traveled the exact same way that the defendant traveled, staying next to the fog line, the Court has never considered that to be a lane change. It's not a lane change

until such time that you would actually be in a lane and then if you go either way, that becomes a lane change. This is confusing at best. But I don't believe that a signal was required by defendant."

¶ 6    The trial court also found that the traffic stop was not objectively reasonable because defendant did not commit any traffic violation. The trial judge stated, "I did not see any violation that the defendant made."

¶ 7    The prosecutor indicated, "just for the record, the People and Defendant were not given an opportunity to make closing arguments" after the close of the evidence. The trial judge apologized for believing the parties had already submitted their closing arguments by way of the authority that had been submitted to the court. The trial court allowed the parties to make closing arguments "for the record." The prosecutor argued that any time a vehicle crossed over a line, "whether it's a lane marker in the center or whether [it's] on the right-hand side," the vehicle has left the lane of traffic it had been traveling within. The prosecutor argued that defendant had been in the left lane and crossed over the series of dashes that came off the fog line, "[s]o either he committed the violation of improper lane usage by going over that dividing line or, in the officer's opinion, he crossed over that line and went into the right-hand lane and now it's a failure to signal, because it's clearly designated that that's a new lane."

¶ 8    The trial court entered a written order, indicating that "all evidence gathered by the officer subsequent to the unlawful stop of the Defendant's vehicle is suppressed from the introduction into evidence." The State filed a certificate of impairment (see Ill. S. Ct. R. 604(a)(1) (eff. Mar. 8, 2016)) and a timely notice of appeal.

¶ 9                                    II. ANALYSIS

¶ 10   On appeal, the State argues that the trial court erred in granting defendant's motion to suppress evidence. Specifically, the State argues that the trial court improperly relied on its own personal observations of facts, which were facts outside of the record, when the trial judge referenced his own driving habits. The State additionally argues that the trial court erred in granting defendant's motion to suppress because Officer Glenn had probable cause to initiate the traffic stop where "defendant crossed the white striped lane line" that divided the two lanes without activating his turn signal. The State further contends that even if Officer Glenn did not have probable cause to initiate the traffic stop, he had reasonable, articulable suspicion of criminal activity to warrant the stop because his belief that defendant committed a traffic violation was objectively reasonable.

¶ 11   Defendant argues that this court should reject the State's claim that the trial court based its ruling on its own personal observations of facts outside the record because the State forfeited this argument by failing to raise the issue in the trial court. Defendant also argues that the trial court had relied on the evidence presented in making its ruling, the trial court could take judicial notice of geographical facts *sua sponte*, and this court can affirm the trial court's ruling on any basis in the record regardless of the trial court's reasoning. Defendant contends that this court should affirm the trial court's suppression order because Officer Glenn did not have probable cause to initiate the stop because defendant did not violate section 11-804(d) of the Vehicle Code, section 11-804(d) of the Vehicle Code is not ambiguous, and Officer Glenn's belief that defendant violated section 11-804(d) was not objectively reasonable.

¶ 12   In reviewing a trial court's ruling on a motion to suppress evidence, we apply a two-part standard of review. See *People v. Lampitok*, 207 Ill. 2d 231, 240 (2003). Under this standard,

we give great deference to and uphold the factual findings and witness credibility determinations of the circuit court unless those findings are against the manifest weight of the evidence. *Id.* However, we review *de novo* the trial court's ultimate legal ruling as to whether suppression is warranted. *Id.*

¶ 13                                    A. Trial Court's Comments

¶ 14    Initially, we address the State's argument that the trial court committed reversible error by relying on its own personal driving habits in making its ruling, thereby improperly considering facts outside the record. Defendant argues that the State has forfeited this issue by failing to raise it in the trial court. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988); *People v. Holloway*, 86 Ill. 2d 78, 91 (1981) (issues that are not raised in the trial court are generally considered forfeited on appeal; this principle applies to the State as well as the defendant in a criminal case). The State acknowledges that it did not object to the trial court's ruling on this alleged basis but argues that this issue should be reviewed as plain error pursuant to Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967).

¶ 15    Rule 615(a) provides that on appeal, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." *Id.* The State contends that the trial court's error of making its ruling based on its own personal observations affected the substantial right of the People to completely try the defendant.

¶ 16    In a bench trial, the deliberations of the trial judge are limited to the record made before him during the course of the trial. *People v. Wallenberg*, 24 Ill. 2d 350, 354 (1962). "A determination made by the trial judge based upon a private investigation by the court or based upon private knowledge of the court, untested by cross-examination, or any of the rules of evidence, constitutes a denial of due process of law." *Id.*

¶ 17    Although the State is claiming that it has a substantial right similar to a criminal defendant's right to due process that could be violated by the trial court's consideration of improper evidence, the State has cited no authority to support a claim that it, as the prosecuting party, has any such "substantial right" to warrant a plain error review under Rule 615(a). See *People v. Woodrum*, 223 Ill. 2d 286, 308 (2006) ("due process requires the State to prove every element of an offense beyond a reasonable doubt"); *People v. Baldwin*, 199 Ill. 2d 1, 12 (2002) ("due process requires that a charging instrument adequately notify a defendant of the offense charged with sufficient specificity to enable a proper defense"); *People v. Swift*, 202 Ill. 2d 378, 383 (2002) (due process requires that all facts necessary to establish the statutory sentencing range under which a defendant's sentence falls must be proven to a jury beyond a reasonable doubt); *People v. Brown*, 169 Ill. 2d 94, 103 (1995) (a criminal conviction obtained through the State's knowing use of false testimony constitutes a violation of due process). While there is no question that a criminal defendant may request a plain error review where an error has affected his or her substantial rights, few cases address a request for a plain error review made by the State in a criminal appeal. In this case, in support of its contentions that the State possesses a substantial right to completely try a defendant and that this right was affected by the trial judge's alleged improper consideration of its own personal observations, the State cites *People v. Oswald*, 106 Ill. App. 3d 645, 649 (1982), and *People v. Lucy*, 204 Ill. App. 3d 1019, 1033 (1990).

¶ 18    In *Oswald*, the State appealed the trial court's order, which granted supervision to the defendants but also terminated the supervision *instanter*, with the State arguing that the

dispositions were unauthorized by law. *Oswald*, 106 Ill. App. 3d at 646. The defendant in *Oswald* argued that the State had waived the issue by failing to argue the matter in the trial court. *Id.* at 649. In *Oswald*, the second district appellate court conducted plain error review, reasoning that the waived issue was a matter of law concerning the construction of the supervision statute, the trial court had made a determination as to its interpretation of the statute, and the alleged error did not arise until the entry of the judgment dismissing the charges. *Id.* (citing *People v. Smith*, 42 Ill. App. 3d 731, 733 (1976) (conducting a plain error review at the request of the State where the trial court applied the wrong speedy trial statute, "affecting the substantial right of the People to bring the defendants to trial within a longer period than that allowed by the circuit court"), and *People v. Joyner*, 57 Ill. App. 3d 948, 952-53 (1978) (citing *Smith* and Rule 615(a) in support of its holding that "the appellate court is entitled to consider any relevant positions which are raised at any time if such may pertain to proper construction of statutes under consideration")).

¶ 19    In *Lucy*, the trial court found that defendant had been arrested prior to his confession, which the defendant argued was not admissible. *Lucy*, 204 Ill. 2d at 1028-29. The trial court granted defendant's motion to quash arrest and set the matter for further hearing to determine if the State desired to proceed with the case. *Id.* at 1029. Neither the court's order nor the parties' arguments had addressed the question of whether quashing defendant's arrest would result in the suppression of defendant's postarrest confession. *Id.* On appeal, the State argued that the case should be remanded for a hearing on the voluntariness and admissibility of defendant's confession, despite the illegality of his arrest. *Id.* at 1022, 1031-32. Defendant argued that the State had forfeited the issue for review by failing to request such a hearing before the trial court. *Id.* at 1032. The fifth district appellate court in *Lucy* stated that "this court may review alleged error which was waived by the State under the doctrine of plain error" where the error, although waived, affects the substantial right of the People. *Id.* at 1033 (citing *Oswald*, 106 Ill. App. 3d at 649). The fifth district appellate court noted that review under the plain error doctrine was at the discretion of the reviewing court. *Id.* The fifth district appellate court found the People's right to have the trial court make an explicit determination as to the admissibility of defendant's confession was "sufficiently substantial" and that to deprive the State of a defendant's voluntary confession "would affect their substantial right to completely try the defendant." *Id.*

¶ 20    We note that in *People v. McAdrian*, 52 Ill. 2d 250, 254 (1972), the State requested a plain error review pursuant to Rule 615(a) in regard to an argument that the State was presenting for the first time on appeal pertaining to the trial court's application of a speedy trial statute. Without discussing the plain error rule, our supreme court took issue with the fact that an inadequate factual record had been established in the trial court, due to the State's failure to raise the issue, and held that the State had, therefore, waived any right to have the issue determined on appeal. *Id.* at 254-55 ("[t]he failure to urge a particular theory before the trial court will often cause the opposing party to refrain from presenting available pertinent rebuttal evidence on such theory, which evidence could have a positive bearing on the disposition of the case in both the trial and reviewing courts"). While our supreme court in *McAdrian* did not indicate that the State was precluded from requesting a plain error review or that the State did not possess a "substantial right" within the meaning of Rule 615(a), our reading of *McAdrian* indicates that our supreme court did not reach these issue.

¶ 21    Other than citing *Oswald* and *Lucy*, the State has offered no other support for its request for a plain error review or in support of its contentions that the People possess a substantial right to completely try a defendant and that this substantial right of the State was affected in this case. We do not find the State's argument for a plain error review to be persuasive and do not find the alleged error in this case falls within the scope of Rule 615(a). Thus, the State has forfeited this issue for review on appeal. *Holloway*, 86 Ill. 2d at 91 (the forfeiture principal applies to the State as well as the defendant in a criminal case).

¶ 22    Even if the State is correct in asserting that it has a substantial right to try defendant, which was affected in this case to warrant a plain error review pursuant to Rule 615(a), we find no such error occurred. The State's assertion that "the record shows that the trial court based its ruling entirely on its own personal observation of facts outside the record" is rebutted by the record. The record shows that, despite the trial judge mentioning his personal familiarity with the particular juncture of Highway 136 at issue, the trial court's ruling was based on the evidence presented. Evidence was presented by way of photographs, video, and testimony regarding the description of the lane division at issue and the manner in which defendant drove at the time the single westbound lane became divided into two lanes. The record shows that the trial judge specifically indicated that he had reviewed the photographs and video entered into evidence and found that defendant had continuously traveled along the right-hand fog line and made no movement from one lane into another lane. Thus, the record shows that the trial court's ruling that defendant did not execute a lane change was based upon the evidence presented. Furthermore, pursuant to Illinois Rule of Evidence 201, the trial court could *sua sponte* take judicial notice of facts that are generally known within its territorial jurisdiction. Ill. Evid. R. 201(b) (eff. Jan. 1, 2011) ("[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"); Ill. R. Evid. 201(c) (eff. Jan. 1, 2011) ("[a] court may take judicial notice, whether requested or not"). Consequently, our review of the record shows that the State's contention that the trial court considered facts outside the record by relying on its own driving habits and that trial court "substituted its own personal beliefs in place of the statutory requirement of the Illinois Vehicle Code" is without merit.

¶ 23                                    B. Traffic Stop

¶ 24    The State also argues that the trial court erred in granting defendant's motion to suppress because Officer Glenn had probable cause to effectuate the traffic stop. Alternatively, the State argues that Officer Glenn's belief that defendant committed a traffic violation was objectively reasonable. Defendant contends that Officer Glenn did not have probable cause to initiate the stop because defendant did not violate section 11-804(d) of the Vehicle Code and Officer Glenn's belief that defendant had violated section 11-804(d) was not objectively reasonable.

¶ 25    Both the fourth amendment of the United States Constitution and article I, section 6, of the Illinois Constitution of 1970 protect individuals from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. The due process clause of the fourteenth amendment of United States Constitution extends this constitutional guarantee to searches and seizures conducted by State officials. *People v. Gaytan*, 2015 IL 116223, ¶ 20. Our supreme court has interpreted the search and seizure clause of the Illinois Constitution in the same

manner as the fourth amendment, while allowing for consideration of "state tradition and values." (Internal quotation marks omitted.) *Id.* ¶ 50 (acknowledging the adoption of the "limited lockstep" approach to interpreting our state constitution's search and seizure clause, which allows for the consideration of state tradition and values, so that "there may be instances where the meaning of our state search and seizure clause differs from that of the federal constitution"); *People v. Caballes*, 221 Ill. 2d 282, 335 (2006) (reaffirming adherence to the limited lockstep approach to interpreting the fourth amendment and article I, section 6, of the Illinois Constitution). In this case, defendant does not contend that the facts of this case would support interpreting our state's search and seizure clause different from that of the federal constitution. See *Gaytan*, 2015 IL 116223, ¶ 50.

¶ 26 Generally, a stop of a vehicle based on a suspected violation of the law constitutes a seizure. *Id.* ¶ 20. For a traffic stop to comport with the reasonableness requirement of the constitutional guarantees, the officer effectuating the stop must have at least a reasonable, articulable suspicion that a violation of law has occurred. *Id.* If reasonable suspicion is lacking, the traffic stop is unconstitutional and any evidence that was obtained as a result of the stop is generally inadmissible. *Id.*

¶ 27 Here, Officer Glenn initiated the traffic stop of defendant's vehicle due to defendant's alleged failure to signal a lane change in violation of section 11-804(d) of the Illinois Vehicle Code (625 ILCS 5/11-804(d) (West 2016)). Section 11-804(d) of the Illinois Vehicle Code, in pertinent part, provides:

> "(d) The electric turn signal device [required in every motor vehicle, other than certain antique vehicles, by Section 12-208 of this Act] must be used to indicate an intention to turn, change lanes or start from a parallel parked position ***." *Id.*

¶ 28 In construing a statute, the primary objective is to give effect to the legislature's intent. *Gaytan*, 2015 IL 116223, ¶ 23. The best indication of legislative intent is the statutory language, given its plain and ordinary meaning. *Id.* In determining legislative intent, a court may consider the purpose and necessity for the law and the consequences that would result from construing the statute one way or the other. *Id.* The construction of a statute is a question of law that is reviewed *de novo. Id.*

¶ 29 In this case, the trial court found that the evidence showed that defendant did not make a lane change and, therefore, did not violate section 11-804(d) of the Vehicle Code. Our review of the video shows that defendant did not move from the left lane into the right lane. Rather, the video shows that defendant continued to proceed alongside the right-hand white fog line, when a white dashed line abruptly appeared from the right-side white fog line and continued toward the middle of the westbound lane, eventually dividing the single lane into two separate lanes. Defendant crossed the white dashed line as the dashed line appeared on the road in front of him, with the single lane eventually becoming two lanes that were separated by the white dashed line. At the point defendant crossed over the white dashed line, however, he was continuing along the right-side fog line and did not make any abrupt movements in either direction. Thus, there was no evidence presented indicating that defendant had changed from one lane to another lane. Instead, the evidence showed that two separate lanes had not yet been formed at the point defendant crossed over the white dashed line. See 625 ILCS 5/1-136 (West 2016) (defining a "[l]aned roadway" as a "roadway which is divided into two or more clearly marked lanes for vehicular traffic"). Therefore, the trial court's finding that defendant did not execute a lane change was not against the manifest weight of the evidence.

¶ 30      Additionally, Officer Glenn's belief that defendant committed a traffic violation for failing to signal a lane change was not objectively reasonable where no lane change had occurred. See *Heien v. North Carolina*, 574 U.S. ___, ___, 135 S. Ct. 530, 536 (2014) (holding that reasonable suspicion justifying a traffic stop can be supported by an officer's mistaken understanding of the scope of a legal prohibition, if the mistaken belief was objectively reasonable); *Gaytan*, 2015 IL 116223, ¶ 48 (finding that the statute at issue was ambiguous and the officers' belief that a violation of the statute occurred was objectively reasonable). Defendant crossed the white dashed lines as he continued traveling in the single westbound lane, prior to the dash marks establishing two separate lanes. Given these circumstances, Officer Glenn's belief that defendant had changed lanes was not objectively reasonable.

¶ 31      In support of its argument that Officer Glenn's belief that defendant had made a lane change was objectively reasonable, the State cites *People v. Theus*, 2016 IL App (4th) 160139, ¶ 36, in which the fourth district appellate court reversed the trial court's grant of the defendant's motion to suppress, holding that a traffic stop was justified where it had been predicated on an officer's objectively reasonable belief that the driver made a lane change without signaling. In *Theus*, the officer testified at the suppression hearing that the driver had made an " 'abrupt lane change,' " where the road had split into two lanes, without signaling. *Id.* ¶ 6. The driver testified that he had just continued straight in the lane that he had been traveling. *Id.* ¶ 8. The trial court found that there were no reasonable grounds for the officer to believe that section 11-804 had been violated where " '[t]here was no movement made from one marked lane to another.' " *Id.* ¶¶ 9, 18. The State filed a successful motion to reconsider, and thereafter, the defendant filed a motion to reconsider, with the trial court granting the motion to reconsider because section 11-804 of the Vehicle Code was unamibiguous. *Id.* ¶¶ 11-13, 18. On appeal, the fourth district appellate court noted that the driver was traveling in a single lane that widened and became two lanes, stating "the solid white line remained on [the] right, broken white lines appeared in front of [the vehicle] to delineate two lanes" and the driver "could not continue driving straight; otherwise he would be straddling the dotted white line separating the two lanes." *Id.* ¶¶ 31, 34. The fourth district appellate court found that the statute "does not address whether it applies to lane divisions and mergers, and thus an ambiguity arises when applying the law to [that juncture of the road]," where one lane became two lanes, requiring the driver to "pick one." *Id.* ¶ 34. The fourth district appellate court held that while there was no ambiguity in section 11-804, requiring a signal when changing lanes, the state was "not at all clear" as to whether a turn signal is required when a single lane divides into two lanes. *Id.* ¶¶ 34-35. The *Theus* court held that due to the ambiguity in the statute, even if a turn signal was not required, the officer's belief that a failure to signal violated section 11-804 was objectively reasonable. *Id.* ¶¶ 35-36.

¶ 32      We decline the State's request for this court to follow *Theus*. First, we hold that section 11-804(d) is not ambiguous. Section 11-804(d) is clear in its requirement that a turn signal "must be used to indicate an intention to *** change lanes." 625 ILCS 5/11-804(d) (West 2016). Despite its eventual holding that section 11-804(d) was ambiguous in its requirement of turn signal when a single lane divides into two separate lanes, the *Theus* court acknowledged that the signal requirement of 11-804(d) when changing lanes was unambiguous. See *Theus*, 2016 IL App (4th) 160139, ¶ 34. Second, we believe that the issue of whether a lane change occurred is a factual determination. The trial court in *Theus* found that " '[t]here was no movement made from one marked lane to another' " to require a lane change. *Id.* ¶¶ 9, 18.

Based on that factual determination in *Theus*, the trial court had found there was no violation of section 11-804(d) of the Vehicle Code. Additionally, the facts in *Theus* are distinguishable from this case. In *Theus*, the single lane widened with white dashed markings appearing, almost without warning, "in front of" the driver's vehicle, forming two separate lanes, and the officer testified that the driver had made an abrupt lane change without activating a turn signal. *Id.* ¶¶ 6, 9, 33, 34. In this case, the single westbound lane of Highway 136 widened, with the white dashed marking originating from the right side of the road toward the center of the road and those white markings abruptly crossing in front of defendant's vehicle. While Officer Glenn testified that he believed defendant had continued in the newly forming left lane before moving back toward the right-hand fog line, the video showed that defendant continuously followed along the right-hand fog line with no abrupt movement in either direction. Accordingly, Officer Glenn's belief that a lane change occurred to require a turn signal was not objectively reasonable where the evidence showed that defendant continued following along the right-side fog line and could not have changed lanes at that particular juncture of the road because the white dashed road markings had not yet divided the single lane into two separate lanes.

¶ 33    Therefore, the trial court did not err in granting defendant's motion to quash arrest and suppress evidence.

¶ 34                                III. CONCLUSION

¶ 35    The judgment of the circuit court of Hancock County is affirmed.

¶ 36    Affirmed.

¶ 37    JUSTICE SCHMIDT, dissenting:

¶ 38    I respectfully dissent. It would seem clear that this was a pretext stop. However, the United State Supreme Court says that pretext stops are fine as long as there is a legal basis for the stop. *Whren v. United States*, 517 U.S. 806, 814 (1996).

¶ 39    As the majority concedes, as defendant was driving along the highway, a new lane appeared to his right. That lane was delineated by a white dashed line that proceeded straight, while the fog line curved off to defendant's right, creating a new right-hand lane. As the majority concedes, defendant had to cross the white dashed line in order to stay next to the fog line. That is, he moved from the lane in which he was traveling, to the newly formed lane without signaling. *Supra* ¶ 29.

¶ 40    It is clear that defendant could have continued straight in the (now) left-hand westbound lane without ever crossing the white dashed line. It was objectively reasonable for the officer to believe that defendant's action in crossing the white dashed line without signaling was a violation of the Illinois Vehicle Code (625 ILCS 5/11-804(d) (West 2016)). The fact that it was a "CS" violation is irrelevant. We see cases all the time with drug interdiction officers stopping vehicles on the interstate for traveling three miles-per-hour over the posted speed limit. Those stops withstand probable cause attacks. Nonetheless, what reasonable police officers routinely, if ever, stop the garden variety motorist for driving three miles-per-hour over the limit on an interstate highway? We all know the answer to that question. I think it is important to talk about the 400-pound gorilla in this case. This was a pretext stop, but the law allows pretext

stops. *Whren*, 517 U.S. at 814. A reasonable police officer could believe that when defendant crossed the newly formed white dashed line without signaling, he was making a lane change. I am at a loss as to figure out how reasonable people can argue that crossing the white dashed line did not constitute a lane change. It appears that reasonable minds can disagree.

¶ 41　　　　I would reverse the trial court and remand for further proceedings.