2022 IL App (3d) 190621

Opinion filed February 1, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Peoria County, Illinois. |
| | ) | |
| v. | ) | Appeal Nos. 3-19-0621 and 3-20-0022 |
| | ) | (cons.) |
| | ) | |
| QUANZES R. JACKSON, | ) | Circuit Nos. 19-CF-171 and 19-CF-172 |
| | ) | |
| Defendant-Appellant. | ) | The Honorable |
| | ) | Paul P. Gilfillan and John P. Vespa, |
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Judges, Presiding. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SHAWN KATRELL JOINER, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

_____

JUSTICE LYTTON delivered the judgment of the court, with opinion.
Justices Daugherity and Hauptman concurred in the judgment and opinion.

_____

**OPINION**

¶ 1        A police officer pulled over defendant Shawn Katrell Joiner for failing to activate his turn

signal as he parked next to a curb on a residential street. Defendant Quanzes Jackson was a

passenger in the vehicle. The officer found marijuana on Jackson, and the State charged him with

unlawful possession of cannabis (720 ILCS 550/4(b) (West 2018)) and unlawful possession with intent to deliver cannabis (*id.* § 5(c)). The officer found a gun in the vehicle, and the State charged Joiner with unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2018)).

¶ 2        Joiner and Jackson filed a joint motion to quash arrest and suppress evidence. The trial court denied the motion. Both defendants participated in stipulated bench trials and were found guilty. The trial court sentenced Joiner to 7 years in prison and Jackson to 12 months of conditional discharge. On appeal, defendants argue that the trial court erred in denying their motion to quash and suppress. We reverse the trial court's denial of defendants' motion and reverse defendants' convictions outright.

¶ 3                                             BACKGROUND

¶ 4        On March 21, 2019, defendant Shawn Katrell Joiner was driving on Arago Street in Peoria with defendant Quanzes R. Jackson as his passenger. Arago Street is a residential roadway with two lanes of traffic, one in each direction. There are no markings on the roadway designating lanes. Vehicles can park along the curbs of the street, but there are no markings designating parking spaces or a parking lane. While driving on Arago Street, Joiner maneuvered his vehicle to the right to park along the curb in front of Jackson's house. Joiner did not activate his turn signal before or after he did so.

¶ 5        Officer Tyler Hodges of the Peoria Police Department executed a traffic stop of Joiner's vehicle because of Joiner's failure to signal. As Hodges approached the vehicle, he smelled a strong odor of marijuana and observed an open bottle of alcohol in Joiner's lap. Hodges asked defendants to step out of the vehicle. When they did, Hodges smelled the odor of marijuana coming from Jackson. Hodges asked Jackson if he had marijuana on him, and Jackson admitted he did.

Hodges searched Jackson and found six individually wrapped bags of marijuana weighing a total of 22 grams.

¶ 6 Hodges searched the vehicle and found a .22-caliber handgun behind the driver's seat. Hodges arrested both defendants. The State charged Joiner with unlawful possession of a weapon by a felon and Jackson with unlawful possession of cannabis and unlawful possession with intent to deliver cannabis.

¶ 7 Defendants jointly filed a motion to quash arrest and suppress evidence, arguing that Hodges's stop was unreasonable because Joiner did not violate the Illinois Vehicle Code (625 ILCS 5/1-100 *et seq.* (West 2018)) when he moved his vehicle to the curb to park in front of Jackson's house without signaling. Following hearings, the trial court denied defendants' motion, finding that section 11-804 of the Vehicle Code (*id.* § 11-804) required Joiner to use his turn signal because he "changed lanes" when he moved his vehicle from his "lane of travel to the parking lane." Defendants filed a motion to reconsider, which the trial court denied.

¶ 8 The court conducted a stipulated bench trial for Joiner. The court found Joiner guilty of unlawful possession of a weapon by a felon. Joiner filed a motion for acquittal or a new trial, alleging that the court erred in denying his motion to quash arrest and suppress evidence. The trial court denied the motion and sentenced Joiner to seven years' imprisonment. Joiner filed a motion to reconsider sentence, which the trial court denied.

¶ 9 At Jackson's stipulated bench trial, the court found Jackson guilty of unlawful possession of cannabis with the intent to deliver. Jackson filed a motion for a new trial based on the trial court's denial of his motion to quash and suppress. The trial court denied the motion and sentenced Jackson to 12 months of conditional discharge.

¶ 10 ANALYSIS

¶ 11　　　　　The fourth amendment to the United States Constitution guarantees the right of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures. *People v. Tramble*, 2012 IL App (3d) 110867, ¶ 11 (citing U.S. Const., amend. IV). The temporary detention of individuals during a traffic stop constitutes a seizure within the meaning of the fourth amendment. *Id.* (citing *Whren v. United States*, 517 U.S. 806 (1996)). Thus, the decision to stop a vehicle is constitutional only if the police have at least a reasonable, articulable suspicion to justify the stop. *Id.* (citing *People v. Hackett*, 2012 IL 111781). A police officer may stop a vehicle where he has a reasonable, articulable suspicion that the driver violated the Vehicle Code. *People v. Mott*, 389 Ill. App. 3d 539, 544 (2009).

¶ 12　　　　　An officer's objectively reasonable mistake of law does not violate the fourth amendment. *People v. Gaytan*, 2015 IL 116223, ¶ 45. However, where a traffic stop is based on an unreasonable mistake of law, it is unconstitutional as violative of the fourth amendment. *People v. Kaczkowski*, 2020 IL App (3d) 170764, ¶ 17; *Mott*, 389 Ill. App. 3d at 543-44. An officer conducting a traffic stop commits an unreasonable mistake of law by misinterpreting an unambiguous statute. *People v. Rice*, 2021 IL App (3d) 180549, ¶ 21; *Kaczkowski*, 2020 IL App (3d) 170764, ¶ 15.

¶ 13　　　　　Section 11-804 of the Vehicle Code is unambiguous. *Kaczkowski*, 2020 IL App (3d) 170764, ¶ 16; *United States v. Stanbridge*, 813 F.3d 1032, 1037 (7th Cir. 2016). At the time of Joiner's stop, the statute provided in pertinent part:

> "(a) No person may turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in Section 11-801 or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made

4

with reasonable safety. No person may so turn any vehicle without giving an appropriate signal in the manner hereinafter provided.

(b) A signal of intention to turn right or left when required must be given continuously during not less than the last 100 feet traveled by the vehicle before turning within a business or residence district, and such signal must be given continuously during not less than the last 200 feet traveled by the vehicle before turning outside a business or residence district.

(c) No person may stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided in this Chapter to the driver of any vehicle immediately to the rear when there is opportunity to give such a signal.

(d) The electric turn signal device required in Section 12-208 of this Act must be used to indicate an intention to turn, change lanes or start from a parallel parked position ***." 625 ILCS 5/11-804 (West 2018).

¶ 14 The fundamental rule of statutory interpretation is to ascertain and give effect to the intent of the legislature. *Dome Tax Services Co. v. Weber*, 2019 IL App (3d) 170767, ¶ 10. The most reliable indicator is the language of the statute itself. *Id.*

¶ 15 Pursuant to its plain language, section 11-804 of the Vehicle Code "requires an appropriate signal be used when a vehicle makes a turn, changes lanes, encroaches onto the other side of the street or road, and leaves the roadway." *Tramble*, 2012 IL App (3d) 110867, ¶ 14. Moving within a single lane, even moving as far right within a lane as possible, does not require a signal. *Id.* ¶¶ 14, 17; see also *People v. Bowden*, 2019 IL App (3d) 170654, ¶ 29 (no signal required where no lane change occurred). "As a practical matter, 'changing lanes' requires the existence of more than one

lane: In order to change lanes from Lane A to Lane B, Lane A must exist." *Mahaffey v. State*, 364 S.W.3d 908, 913 (Tex. Crim. App. 2012).

¶ 16        The word " '[l]ane' is not defined [in the Vehicle Code] (and the Illinois courts have not had occasion to construe the term, especially as applied to an unstriped roadway)." *Stanbridge*, 813 F.3d at 1037. However, the Vehicle Code defines "[l]aned roadway" as "[a] roadway which is divided into two or more clearly marked lanes for vehicular traffic." 625 ILCS 5/1-136 (West 2018). And, according to the Vehicle Code, "[t]raffic" contemplates the use of "any highway for purposes of travel." *Id.* § 1-207. "[I]n common practice, a traffic 'lane' is one in which vehicles legally and customarily are driven toward their destinations." *People v. Mueller*, 2018 IL App (2d) 170863, ¶ 21.

¶ 17        Where words are not defined in a statute, they should be given their ordinary meaning. *People v. Cardamone*, 232 Ill. 2d 504, 513 (2009). The New Oxford American Dictionary defines "lane" as "a division of a road marked off with painted lines and intended to separate single lines of traffic according to speed or direction." New Oxford American Dictionary 951 (2d ed. 2005).

¶ 18        In this case, the trial court determined that Joiner violated section 11-804 of the Vehicle Code by not activating his turn signal because he "changed lanes" when he moved his vehicle from his "lane of travel to the parking lane." The trial court's conclusion is not supported by the facts or law. First, the definition of "laned roadway" requires that a lane be marked. See 625 ILCS 5/1-136 (West 2018); New Oxford American Dictionary 951 (2d ed. 2005). Here, there were no markings separating the area on Arago Street where Joiner was driving and the area next to the curb where he parked. Moreover, a "lane" must be used for driving. See 625 ILCS 5/1-136, 1-207 (West 2018); *Mueller*, 2018 IL App (2d) 170863, ¶ 21; New Oxford American Dictionary 951 (2d ed. 2005). Here, the trial court found that Arago Street consisted of two lanes in each direction:

6

one for driving and one for parking. This conclusion was incorrect because there were no markings depicting an area of the road used exclusively for parking, and the word "lane" implies that the area of the roadway is used for driving and/or traveling, not parking. See 625 ILCS 5/1-136 (West 2018) ("[l]aned roadway" contains "lanes for vehicular traffic"); New Oxford American Dictionary 951 (2d ed. 2005) ("lane" is "intended to separate single lines of traffic"); 625 ILCS 5/1-207 (West 2018) ("[t]raffic" means using a roadway "for purposes of travel"); *Mueller*, 2018 IL App (2d) 170863, ¶ 21 ("traffic 'lane' is one in which vehicles legally and customarily are driven").

¶ 19    Here, there is no dispute that Arago Street consisted of only one lane in each direction for driving. Thus, Joiner did not "change lanes" when he moved his vehicle to the right to park in front of Jackson's home. Because no lane change occurred, Joiner was not required to signal. See *Tramble*, 2012 IL App (3d) 110867, ¶ 14; *Bowden*, 2019 IL App (3d) 170654, ¶ 29.

¶ 20    Our conclusion is consistent with the official Rules of the Road in Illinois. Police officers as well as drivers are on notice of these rules, which are issued by our Secretary of State's office. See *People v. Mueller*, 2018 IL App (2d) 170863, ¶ 23. In the section titled, "Signaling," the rules require that drivers in a business or residential area "give a continuous turn signal for at least 100 feet before turning." (Emphasis omitted.) Ill. Sec'y of State, 2022 Illinois Rules of the Road 30 (Jan. 2022), https://www.ilsos.gov/publications/pdf_publications/dsd_a112.pdf (last visited Jan. 29, 2022) [https://perma.cc/VWR9-ABT9]. With respect to changing lanes, the rules provide in pertinent part:

"When moving your vehicle from the left-hand lane to the right-hand lane, check for traffic behind your vehicle and to the right by turning your head and visually assessing the area.

7

If the area is clear, give the right-turn signal and carefully move into the right lane." *Id.* at 31.

This rule only applies where a road contains at least two delineated lanes used for driving in the same direction: a right-hand lane and a left-hand lane. Because Arago Street consists of only one lane in each direction, this rule did not apply to Joiner. Furthermore, there is no other rule contained in the Illinois Rules of the Road requiring a driver to use a turn signal when moving a vehicle within a single lane of traffic or parking next to a curb.

¶ 21 Our holding is also supported by case law, as well as the language of the statute. The Seventh Circuit noted that section 11-804 contains no "explicit command to signal before moving toward a curb to park." *Stanbridge*, 813 F.3d at 1037. Nor does the language of the statute contain an implicit requirement that drivers signal before parking next to a curb. "It is a fundamental principle of statutory construction that the express mention of one thing in a statute excludes all other things not mentioned." *Welch v. Johnson*, 147 Ill. 2d 40, 52 (1992). Section 11-804(d) of the Vehicle Code required drivers to use a turn signal in three situations: (1) "to indicate an intention to turn," (2) to "change lanes," and (3) to "start from a parallel parked position." 625 ILCS 5/11-804(d) (West 2018). Moving within one's lane to park next to a curb is not one of the situations mentioned in section 11-804(d). See *id.* If the legislature intended to require drivers to use a turn signal when pulling over to park next to a curb, it would have said so, as it did for drivers in the three situations mentioned, including drivers "start[ing] from a parallel parked position." See *id.* The absence of statutory language requiring drivers to use a turn signal when pulling over to a parked position supports our determination that Joiner was not required to activate his turn signal when he parked next to the curb.

8

¶ 22    "When police conduct results in a violation of constitutional rights, evidence obtained as a result of that violation *** is to be suppressed." *People v. McCauley*, 163 Ill. 2d 414, 448 (1994). Any evidence seized pursuant to an unconstitutional traffic stop should be suppressed. *Kaczkowski*, 2020 IL App (3d) 170764, ¶ 17.

¶ 23    Here, because no lane change occurred, Officer Hodge's belief that Joiner committed a traffic violation for failing to signal was not objectively reasonable. See *Bowden*, 2019 IL App (3d) 170654, ¶ 30. As a result, Hodge's traffic stop violated defendants' constitutional rights, and the evidence seized pursuant to the stop must be suppressed. See *Kaczkowski*, 2020 IL App (3d) 170764, ¶ 17.

¶ 24    Without the seized evidence, the court could not find Joiner guilty of unlawful possession of a weapon by a felon nor Jackson guilty of unlawful possession with the intent to deliver cannabis. Thus, we reverse defendants' convictions. See *People v. Williams*, 2020 IL App (1st) 172992, ¶ 12; *People v. Hyland*, 2012 IL App (1st) 110966, ¶ 36.

¶ 25                                        CONCLUSION

¶ 26    The judgment of the circuit court of Peoria County is reversed.

¶ 27    Reversed.

**No. 3-19-0621**

| | |
|---|---|
| **Cite as:** | *People v. Jackson*, 2022 IL App (3d) 190621 |
| **Decision Under Review:** | Appeal from the Circuit Court of Peoria County, Nos. 19-CF-171, 19-CF-172; the Hon. Paul P. Gilfillan and the Hon. John P. Vespa, Judges, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Karalis, and Justin Joseph, of State Appellate Defender's Office, of Ottawa, for appellant. |
| **Attorneys for Appellee:** | Jodi Hoos, State's Attorney, of Peoria (Patrick Delfino, Thomas D. Arado, and Jessica A. Theodoratos, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |