**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**September 24, 2014**

# In the Court of Appeals of Georgia

A14A1392. THE STATE v. CARTWRIGHT.

BARNES, Presiding Judge.

The State appeals from the order of the trial court granting Allison's Cartwright's motion to suppress following her arrest for DUI. It contends that the trial court erred in finding that OCGA § 40-8-25 (b) did not apply to a non-functioning center brake light. For the reasons that follow, we reverse.

> [T]hree fundamental principles . . . must be followed when conducting an appellate review of a trial court's ruling on a motion to suppress. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. These principles apply equally whether the trial court ruled in favor of the State or the defendant.

(Punctuation and citations omitted.) *Brown v. State*, 293 Ga. 787, 802-803 (3) (b) (2) (750 SE2d 148) (2013). To the extent that "the evidence at a suppression hearing is uncontroverted and the credibility of witnesses is not in question, we conduct a de novo review of the trial court's application of the law to the undisputed facts." *Jones v. State*, 291 Ga. 35, 36-37 (1) (727 SE2d 456) (2012). To that end, we owe "no deference to the trial court's conclusions of law" and are instead "free to apply anew the legal principles to the facts." (Citation and punctuation omitted.) *Martin v. State*, 316 Ga. App. 220, 220 (729 SE2d 437) (2012).

The facts are essentially undisputed and demonstrate that on the morning of June 26, 2013, a patrol officer with the Cobb County police observed that when Cartwright stopped for a red signal light, the center light located "at the top of the back window . . . under the roof" was not working. Based on his observation, the officer initiated a stop of Cartwright's vehicle, and upon noticing the odor of alcohol on Cartwright's breath and conducting field sobriety tests, subsequently arrested her for DUI. She was also charged with violating OCGA § 40-8-25 (b), which provides, in pertinent part, that "[i]f a motor vehicle is manufactured with two brake lights, both must be operational."

2

Cartwright filed a motion to suppress, contending that the stop was illegal because the officer lacked articulable suspicion for the stop. Specifically, she argued that she had not committed any traffic violations before she was stopped because her two brake lights were functioning. At the hearing on the motion to suppress, the officer was the sole witness. He testified that he observed Cartwright's 2002 BMW 325i

> without an operational center brake light.. . . On 1990 vehicles and newer, coming out of the factory, they actually have three operational brake lights. One on either passenger side, driver side, and one in the center window, which allows other motorists to view the vehicle when it is stopping. . . . [The center light is] a rectangular red light in the center of the rear window of the vehicle.

He further testified that he observed the "two lights on the rear of the vehicle . . . light up and the center one would not," and that he had stopped Cartwright because the center brake light was not operational.

On cross-examination, the officer agreed that OCGA § 40-8-25 (b) only states that if a vehicle has two brake lights then both must be operational, and that Cartwright's BMW had two functional brake lights when he pulled her over. On redirect, the officer agreed that he could have charged Cartwright with violating

3

OCGA § 40-8-26. That statute requires that "[e]very brake light shall be plainly visible and understandable from a distance of 300 feet to the rear both during normal sunlight and at nighttime, and . . . [w]hen a vehicle is equipped with a brake light or other signal lights, such light or lights shall at all times be maintained in good working condition." He further testified that he had stopped Cartwright based on his belief that OCGA § 40-8-25 (b) required that if the vehicle was manufactured with three brake lights, then all of the brake lights had to be operational.

In maintaining that the stop was illegal, Cartwright argued that there was no Georgia law requiring that all three lights be functioning, and that OCGA § 40-8-25 (b) only requires that if a car has two brake lights both must be functional. As to OCGA § 40-8-26 (b), she argued that the State had failed to satisfy its burden to prove, as a matter of law, that the light in question was, in fact, a brake light. The trial court granted Cartwright's motion to suppress. In doing so, the court found as a matter of fact that the light in question was not illuminated when Cartwright was stopped, and also that the officer had acted "in what was his good faith belief" that Georgia law required that the center light be illuminated. But the court ruled that

> as a matter of law . . . there is no requirement under Georgia law that
> there be such a light illuminated, working. . . . [T]he officer's good faith

4

belief was based on. . . his mistaken belief that something was a violation of law, that, in fact, is not a violation of law at all. . . . Because I'm finding that there was no violation of the law upon which the good faith of the Officer could operate . . . I'm going to grant the motion.

Although the State had argued that per *Lancaster v. State*, 261 Ga. App. 348, 350 (1) (582 SE2d 513) (2003), it did not matter whether OCGA § 40-8-25 (b) only required two lights to be functional because the officer had stopped Cartwright because a light he believed to be a brake light was not functioning, and the officer in good faith believed that OCGA § 40-8-25 (b) required all brake lights to be functional. The trial court nonetheless found that *Lancaster* was distinguishable because, unlike in Cartwright's case, "*Lancaster* fails to identify which of the three lights on the rear of the vehicle was the inoperable brake light," and the defendant in that case had conceded that his car was equipped with three brake lights and in this case Cartwright did not do so. It also found, as a matter of law, that there was no law in Georgia requiring that the center light in question be illuminated, and thus the officer's good faith belief justifying the stop was based on a mistaken belief that something was a violation of law, that was not actually a violation of law.

"[I]t is well settled that police may conduct a brief investigatory stop of a vehicle if they have specific, articulable facts that give rise to a reasonable suspicion

5

of criminal conduct." *Lancaster v. State*, 261 Ga. App. at 350 (1). Moreover, "[i]f the officer acting in good faith believes that an unlawful act has been committed, his actions are not rendered improper by a later determination that the defendant's actions *were not a crime according to a technical legal definition or distinction determined to exist in the penal statute.*" (Citation and punctuation omitted and emphasis supplied.) *State v. Hammang*, 249 Ga. App. 811 (549 SE2d 440) (2001) (officer's honest but mistaken belief that defendant had violated traffic law by driving without headlights on through poorly lit intersection when it was "almost dark outside" provided reasonable articulable suspicion for traffic stop.) Thus, even if the officer was mistaken in his belief that the light at issue was a brake light and that Georgia law required that all brake lights be illuminated, "the officer's reasonable belief that an offense had been committed, though he may have been mistaken either as to fact or law, was yet a sufficient 'founding suspicion' to enable the trial court to determine the stop was not mere arbitrariness or harassment, which is the real question." *McConnell v. State*, 188 Ga. App. 653, 654 (1) (374 SE2d 111) (1988) (physical precedent only). The trial court's reasoning in this regard "misses the mark, as it presupposes that a crime must have been committed for the stop to have been valid." *Dixon v. State*, 271 Ga. App. 199, 201(609 SE2d 148) (2005) (officer's later

6

discovery that a vehicle was not required to have functioning fog lights did not render the stop on that basis invalid).

Accordingly, as it is undisputed both that the light at issue was not functioning when Cartwright was stopped and that the officer had acted with the good faith belief that Cartwright had violated OCGA § 40-8-25 (b), the trial court erred in granting Cartwright's motion to dismiss.

*Judgment reversed. Boggs and Branch, JJ., concur*.

7