**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and MERCIER, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**February 14, 2018**

# In the Court of Appeals of Georgia

A17A1785. HARRIS v. THE STATE.

MERCIER, JUDGE.

Following a bench trial, Alfred Harris, Jr. was convicted of driving under the influence of alcohol. Harris appeals his conviction, contending that the trial court erred in denying his motion to suppress. For the reasons that follow, we reverse.

"The State bears the burden of proving that both the search and seizure of evidence were lawful." *Lucas v. State*, 284 Ga. App. 450, 451 (644 SE2d 302) (2007) (citation and punctuation omitted). "When the evidence at a suppression hearing is uncontroverted and the credibility of witnesses is not in question, we conduct a de novo review of the trial court's application of the law to the undisputed facts." *Jones v. State*, 291 Ga. 35, 36-37 (1) (727 SE2d 456) (2012) (citation omitted). The facts in this case are essentially undisputed.

An officer with the Clayton County Police Department testified as follows at the suppression hearing. The officer was stopped in his vehicle behind Harris's vehicle at a traffic light at the intersection of two roads, and another vehicle was in front of Harris's at the light. Harris's right turn signal was engaged. After waiting for several minutes, Harris turned right into an adjacent gas station, drove through the gas station parking lot, and exited on the other side of the gas station to avoid the traffic light. The officer conducted a traffic stop on Harris.

The officer testified that a "Code Section. . . says no vehicle shall disengage to a traffic control device by running the traffic control device." According to the officer, he believed Harris violated the law by "disengaging the stop light, as the Code Section states, by cutting through the parking lot . . . instead of sitting for the light to turn green." The officer further testified that he had been trained that individuals are not allowed to do what Harris did, and he has stopped other drivers in the past for this same conduct. The officer did not identify in his testimony the particular "Code Section" on which he relied, but it is undisputed that the officer believed that Harris had violated OCGA § 40-6-20. As a result of the officer's interaction with Harris during the traffic stop, he subsequently arrested Harris for driving under the influence

2

of alcohol and also charged him with a traffic control device violation pursuant to OCGA § 40-6-20.

OCGA § 40-6-20 (a) states, "The driver of any vehicle shall obey the instructions of an official traffic-control device applicable thereto . . . unless otherwise directed by a police officer," subject to exceptions not applicable to this case. OCGA § 40-6-20 (e) states, "The disregard or disobedience of the instructions of any official traffic-control device or signal placed in accordance with the provisions of this chapter by the driver of a vehicle shall be prima-facie evidence of a violation of law, without requiring proof of who and by what authority such sign or device has been erected."

Although the trial court found that no violation of OCGA § 40-6-20 had occurred, it further found that the traffic stop was legal because the officer's mistake of law was "reasonable but honest." Specifically, the court found that "the officer was under a reasonable belief, based on what he testified was his training, . . . [and] the fact [that] he had cited other people for making the same movement[.]" Following a bench trial in which the relevant facts were stipulated to by the State and by Harris, the court found Harris guilty of driving under the influence of alcohol, and this appeal followed.

In a single enumeration, Harris argues that the trial court erred in denying his motion to suppress because taking a detour through the gas station parking lot to

avoid the traffic signal did not violate OCGA § 40-6-20 and the officer's incorrect understanding of the law did not give rise to the reasonable articulable suspicion required for a traffic stop. The State concedes that Harris did not violate OCGA § 40-6-20 or any other Georgia statute by taking a detour through the parking lot, but argues that because the officer had a good faith basis to believe that Harris violated the law, the traffic stop was based on reasonable articulable suspicion and was valid.

"For a traffic stop to be valid, an officer must identify specific and articulable facts that provide a reasonable suspicion that the individual being stopped is engaged in criminal activity." *Jones*, supra at 38 (2) (citation omitted); see also *Thomason v. State*, 268 Ga. 298, 301 (2) (a) (486 SE2d 861) (1997). In *Heien v. North Carolina*, __ U. S. __ (135 SCt 530, 190 LE2d 475) (2014), the Supreme Court of the United States examined the question of whether a mistake of law can give rise to the reasonable suspicion required under the Fourth Amendment to uphold a search and seizure, and held that "[t]he Fourth Amendment tolerates only *reasonable* mistakes, and those mistakes – whether of fact or of law – must be *objectively* reasonable. We do not examine the subjective understanding of the particular officer involved." Id. at __ (II).

4

In *Abercrombie v. State*, 343 Ga. App. 774 (808 SE2d 245) (2017), this Court recently applied the *Heien* holding in a case with facts similar to those before us now.

> [W]e have previously explained that if an officer, acting in good faith, believes that an unlawful act has been committed, his actions are not rendered improper by a later legal determination that the defendant's actions were not a crime according to a technical legal definition or distinction determined to exist in the penal statute. Instead, when an officer's honest belief that a traffic violation has actually occurred proves to be incorrect, the officer's mistaken-but-honest belief may nevertheless demonstrate the existence of at least an articulable suspicion and reasonable grounds for the stop. And, as we have explained, it is not the function of law-enforcement officers to determine on the spot such matters as the legal niceties in the definition of a certain crime, for these are matters for the courts. To the contrary, the question that must be decided is whether the officer's motives and actions at the time and under all the circumstances were reasonable and not arbitrary or harassing. In light of *Heien*, courts must assess whether an officer's "mistaken-but-honest" belief as to the requirements of a law was objectively reasonable in terms of statutory construction.

*Abercrombie*, supra at 784 (2) (a) (citations and punctuation omitted).

It is clear, based on the plain language of OCGA § 40-6-20 (a) and (e), that Harris did not violate the statute because he did not "disregard" or "disobey" the traffic light's instruction to stop at the intersection. See generally *State v. Mussman*,

5

289 Ga. 586, 588 (1) (713 SE2d 822) (2011) (the rules of statutory construction require that we give words their plain and ordinary meaning); *Guice v. Brown*, 334 Ga. App. 199, 201 (778 SE2d 823) (2015) ("The plain language of [OCGA § 40-6-20] does not support [the] claim that [the defendant] violated the statute when he avoided an intersection by traveling through a shopping center. It cannot be said that by traveling through a shopping center, [the defendant] disregarded or disobeyed a traffic signal since there is no evidence that he encountered one.").

"[U]nlike the statute at issue in *Heien*, there is but one reasonable interpretation of the statute[] in this case[.]" *Abercrombie*, supra at 785 (2) (a). The officer's understanding that "disengaging" the traffic light is a violation of OCGA § 40-6-20 is not supported by the plain language of the statute, and nothing in the plain language of the statute indicates that Harris committed a violation by "running" the light, when he took a detour around the intersection. See *Guice*, supra. This is not a case where the law in question is "genuinely ambiguous, such that overturning the officer's judgment requires hard interpretive work[.]" *Heien*, supra at __ (Justice Kagan, concurring). We therefore find that the officer's mistake of law here was not objectively reasonable and there was no reasonable articulable suspicion to support the traffic stop. See *Heien*, supra at __ (II); *Abercombie*, supra at 784 (2) (a).

6

We note that the trial court's ruling was based on *State v. Cartwright*, 329 Ga. App. 154 (764 SE2d 175) (2014), which was decided prior to *Heien*, supra. This Court noted in *Abercrombie*, supra, that in light of the holding in *Heien*, "it is questionable whether *Cartwright* [cit.] continues to maintain any precedential utility." *Abercrombie*, supra at 785 (2) (a), n. 47.

Further, there is no good-faith exception to the exclusionary rule in Georgia. See *Abercrombie*, supra at 791 (2) (b) ("in light of *Gary* [*v. State*, (262 Ga. 573 (422 SE2d 426) (1992)], we must again conclude that, under our Supreme Court's interpretation of OCGA § 17-5-30, there is no good-faith exception in Georgia") (citation and punctuation omitted). Because the officer lacked the reasonable articulable suspicion required to initiate the traffic stop at issue here, the stop violated the Fourth Amendment, and the evidence obtained as a result of the stop should have been suppressed. See *Jones*, supra at 38-39 (2). Therefore, we reverse the denial of Harris's motion to suppress and his conviction.

*Judgment reversed. Barnes, P. J., and McMillian, J., concur.*