Filed 5/12/20

CERTIFIED FOR PUBLICATION

IN THE APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF FRESNO

| | | |
|---|---|---|
| THE PEOPLE, | ) | Sup. Ct. Appeal No. 2816 |
| | ) | |
| Plaintiff and | ) | Sup. Ct. Case No. M18931682 |
| Respondent, | ) | |
| | ) | OPINION |
| v. | ) | |
| | ) | |
| | ) | |
| BILLY RAY GERBERDING, | ) | |
| | ) | |
| Defendant and | ) | |
| Appellant. | ) | |
| | ) | |

APPEAL from a judgment of the Superior Court of Fresno County, Gary R. Orozco, Judge. Reversed.[1]

**Attorneys and Law Firms**

Frederick Hurst, attorney for defendant/appellant Billy Ray Gerberding.

Melani Jones, attorney for plaintiff/respondent Fresno County District Attorney's Office.

---

[1] This opinion was originally issued by the court on May 12, 2020. It was certified for publication on May 29, 2020, which is within the time that the appellate division retained jurisdiction. This opinion has been certified for publication in the Official Reports. It is being sent to the Fifth District Court of Appeal to assist the Court of Appeal in deciding whether to order the case transferred to the court on the court's own motion under Rules 8-1000 – 8.1018.

**Opinion**

D. Tyler Tharpe, J.

# I.

## INTRODUCTION

A law enforcement officer's mistake of law must be reasonable when arresting someone. But, while "reasonable men make mistakes of law, too,"[2] the law must be "genuinely ambiguous" "requir[ing] hard interpretive work," thus posing "a really difficult or very hard question of statutory interpretation."[3] We hold that when an officer arrests someone under an unreasonable mistake of law, the officer lacks probable cause and the arrest is unlawful. Thus, when an officer is not lawfully performing his duties in arresting someone, a person nonviolently resisting, obstructing, or delaying that unlawful arrest cannot be convicted of violating Penal Code section 148, subdivision (a)(1).[4]

Billy Ray Gerberding (appellant) appeals from a judgment of conviction finding him guilty of violating section 148. Appellant contends the trial court erred when it failed to instruct the jury that excessive force is a valid defense to a charge of resisting arrest. He also contends there was insufficient evidence to support the jury's verdict finding him guilty because he did not willfully disobey the officer's orders, the officer did not have probable cause to arrest him, and the officer used excessive force during the arrest. Because we reverse for insufficiency of the

---

[2] *Heien v. North Carolina* (2014) 574 U.S. 54, 61 (*Heien*).

[3] *Id.*, at p. 70 [J. Kagan concurring].

[4] Penal Code section 148, subdivision (a)(1), provides, in pertinent part: "Every person who willfully resists, delays, or obstructs any peace officer . . . in the discharge of his or her office or employment . . . shall be punished . . .." Unless otherwise noted, all references to a section are to Penal Code section 148, subdivision (a)(1).

evidence, we need not address the remainder of appellant's contentions.

## II.

## FACTS

Fresno Police Officer Omar Khan is a member of the Fresno Police Department's Homeless Task Force Unit. His duties include enforcing provisions of the Fresno Municipal Code (FMC) and providing security detail for City of Fresno sanitation crews cleaning up homeless camp sites. Officer Kahn is familiar with FMC section 13-109. The Fresno Police Department has interpreted FMC section 13-109 to mean that if a *person* is obstructing 51% of the sidewalk, then police will ask that person to move. However, if there is room for people to pass, then police will not intervene. Officer Khan's understanding is that FMC section 13-109 applies to sidewalks as well as streets, and that he had cited other people for violating FMC section 13-109.

On October 25, 2018, Officer Kahn was on duty, in uniform, and on patrol in a marked vehicle. He was dispatched to a homeless camp at Peach and Olive Avenues due to complaints about a homeless camp obstructing the sidewalk. On arrival, he observed three male individuals gathered around a cart made of multiple pallets and a tarp. The area has busy traffic, with an apartment building and a store nearby. The officer noticed that the cart was immobile on the sidewalk with one of its wheels broken off. The cart was blocking the sidewalk, forcing anyone trying to use the sidewalk to go into the street in order to get past the obstruction. Since the street is busy in that area, the officer believed it would create a danger to the public.

One of the men by the cart, later identified as appellant, stated to Officer Khan that the cart was broken and could not be moved. Officer Khan told appellant that the cart would have to be moved. He also told appellant that some of the contents of the cart could be stored for up to 90 days. Appellant stated that he wanted the entire cart stored. The officer told appellant that he could not store pets, food or soiled clothes. Appellant became upset and agitated, claiming that he was being harassed. Officer Kahn warned appellant that he could be arrested and go to jail if he did not move the cart, and his property would be either stored or destroyed. Officer Kahn told appellant at least four times to remove his property from the cart. Appellant knew that the officer had given him orders. Another Fresno Police Officer gave appellant the same order to move his belongings from the blocked sidewalk hours before Officer Kahn arrived on the scene. At every turn, appellant refused to move the cart or remove any of its contents.

When appellant told Officer Khan that he was not going to remove any of his property and began to turn and walk away, Officer Kahn told appellant that he was going to be placed under arrest for obstruction of the sidewalk. As appellant was walking away, Officer Kahn reached out for appellant, grabbing his left wrist and telling him that he was under arrest. Appellant was directed to place both of his hands behind his back. Appellant became rigid and tense. Appellant was saying that he did not want to go to jail and began pulling away from the officer. Appellant began to turn toward Officer Khan's right side, which is where he wears his gun, which made the officer nervous. Officer Kahn

-4-

activated his body cam when he started struggling with appellant. Officer Khan ordered appellant to comply, but appellant refused and said "no." He also resisted having his hands put behind his back, which prevented the officer from putting handcuffs on.

As appellant was trying to twist away, the officer swept his legs out from under him and they both went to the ground. Appellant continued to try to get up and get away from the officer. The officer was able to pin appellant and get handcuffs on him at that point. Despite many commands from the officer, appellant continued to be uncooperative. At some point during the arrest, Officer Khan had to call in backup officers when he felt that he was "in over his head" and losing control of the situation. Appellant repeatedly cursed officer Khan during the arrest.

During the altercation, appellant stated "let me go" and "let me do what I have to do" and that he did not want to go to jail. After Officer Khan swept appellant's leg with his own left leg, and straddled him, he did not put his knee on appellant's neck. The officer thought it was possible that appellant was armed, but he found no weapons after searching appellant.

### III.

### DISCUSSION

Appellant argues Officer Khan was not lawfully performing his duties because the officer lacked probable cause to arrest him for violating FMC section 13-109. In his view, FMC section 13-109 only prohibits a person from sitting or standing in the street, and there was no evidence appellant himself was blocking the

sidewalk.  Respondent counters it is reasonable to infer that "a person's belongings are inclusive of their person."

## 1.  Standard of Review

A judgment of conviction will not be reversed on appeal unless there is no substantial evidence supporting it.  (*People v. Bard* (1968) 70 Cal.2d 3, 4-5.)  The reviewing court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence – that is, evidence which is reasonable, credible and of solid value – such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)

In reviewing the record, the court may neither reweigh the evidence nor evaluate witness credibility.  (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)  Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact.  Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction.  (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

## 2.  Analysis

A defendant may not be convicted of an offense against a peace officer engaged in the performance of his or her duties, unless the officer was acting lawfully.  (*In re Manuel G.* (1997) 16 Cal.4th 805, 815; *People v. White* (1980) 101 Cal.App.3d 161, 166.)  "An officer is under no duty to make an unlawful arrest." (*People v. Curtis* (1969) 70 Cal.2d 347, 354, disapproved on other grounds in *People v. Gonzalez* (1990) 51 Cal.3d 1179, 1222.)  An

-6-

officer who arrests a citizen but lacks probable cause to make the arrest is not lawfully performing his duties. (*Id*. at p. 354.) "The rule flows from the premise that because an officer has no duty to take illegal action, he is not engaged in his 'duties,' for purposes of an offense defined in such terms, if his conduct is unlawful." (*People v. Gonzalez*, *supra*, 51 Cal.3d at p. 1217, superseded on other grounds in *Satele v. Superior Court* (2019) 7 Cal.5th 852.) Moreover, "it is no crime in this state to nonviolently resist the unlawful action of police officers." (*In re Michael V.* (1974) 10 Cal.3d 676, 681; see *People v. White,* *supra*, 101 Cal.App.3d at pp. 164, 168 [any duty not to resist arrest "does not apply to a single charge of resisting arrest" under section 148]; *People v. Moreno* (1973) 32 Cal.App.3d Supp. 1, 10 [same].)

Every arrest is unreasonable and violates the Fourth Amendment, unless supported by probable cause. (*Dunaway v. New York* (1979) 442 U.S. 200, 208.) Probable cause is "defined in terms of facts and circumstances 'sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense'" (*Gerstein v. Pugh* (1975) 420 U.S. 103, 111, internal citation omitted.) "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." (*Atwater v. City of Lago Vista* (2001) 532 U.S. 318, 354.)

FMC section 13-109 provides:

> No *person* shall stand or sit upon any street so as in any manner to hinder or obstruct the passage therein of person passing along the same, or so as in any

manner to annoy or molest persons passing along the same, or stand in or at the entrance of any church, hall, theatre, or place of public assemblage so as in any manner to obstruct such entrance. (Emphasis added.)[5]

This is a case of first impression as to the interpretation of FMC section 13-109 and whether, based upon that interpretation, the arrest of appellant was lawful. In reviewing the interpretation of a statute, a legal question, we apply a *de novo* review standard. (*People v. Gonzales* (2018) 6 Cal.5th 44, 49.) We are guided by the rules of statutory construction listed in *People* v. *Arias* (2008) 45 Cal.4th 169, 177, to wit:

(1) Courts look to the Legislature's intent to effectuate a statute's purpose.

(2) Courts give the words of a statute their usual and ordinary meaning.

(3) A statute's plain meaning controls the court's interpretation unless the statutory words are ambiguous.

(4) If the words of a statute do not themselves indicate legislative intent, courts may resolve ambiguities by examining the context and adopting a construction that harmonizes the statute internally and with related statutes.

(5) A literal construction does not prevail if it is contrary to the apparent legislative intent.

(6) If a statute is amenable to two alternative interpretations, courts will follow the one that leads to the more reasonable result.

(7) Courts may consider legislative history, statutory purpose, and public policy to construe an ambiguous statute.

(8) If a statute defining a crime or punishment is susceptible of two reasonable interpretations, courts

---

[5] A violation of FMC section 13-109 may be charged as a misdemeanor offense. (FMC § 1-304, subd. (b).) In fact, appellant was separately charged by the Fresno City Attorney with a misdemeanor violation of FMC section 13-109, in Fresno County Superior Court case number M18929127. That case trailed this matter and was ultimately dismissed at appellant's sentencing hearing.

will ordinarily adopt the interpretation more favorable to the defendant.

Applying those rules of statutory construction, it is abundantly clear that FMC section 13-109 would not support an arrest of appellant in this case. The statute unambiguously deals with persons standing or sitting on a street, which includes a sidewalk. There was no evidence presented that appellant (his person) was standing or sitting on the sidewalk in such a way as to obstruct the passage of anyone passing along it. Instead, it was appellant's cart filled with his personal possessions that was blocking the sidewalk. The plain language of FMC section 13-109 only prohibits blocking a street with one's body, not one's property. Thus, Officer Kahn was mistaken when he concluded that appellant was violating FMC section 13-109.

The focus of our inquiry turns to whether Officer Kahn's mistake of law was objectively reasonable under the facts of the case to support the probable cause to arrest appellant. *(Heien, supra.)* In *Heien*, the United States Supreme Court considered an officer's reasonable but erroneous interpretation of a motor vehicle statute. In that case, a North Carolina Sheriff's Deputy observed a vehicle traveling along the highway with a malfunctioning brake light. Believing the faulty brake light to be a violation of the state's motor vehicle code, the officer executed a traffic stop. During the stop, the officer located controlled substances in a duffel bag. (*Heien, supra*, 574 U.S. at pp. 57-58.)

Heien sought to suppress the evidence uncovered during the search, contending that the stop had violated his rights under the

Fourth Amendment. The trial court denied the suppression motion, but the North Carolina Court of Appeals reversed, holding that the initial stop was invalid because driving with only one working brake light was not actually a violation of North Carolina law. The State appealed, and the North Carolina Supreme Court reversed, holding that the officer's interpretation of the motor vehicle code — even if incorrect — was not unreasonable and thus not a violation of the Fourth Amendment. (*Heien*, *supra*, 574 U.S. at pp. 58-60.)

The United States Supreme Court granted certiorari. The court's majority opinion noted that "the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" (*Heien*, *supra*, 574 U.S. at p. 60, internal citation omitted.) After explaining that "[t]o be reasonable is not to be perfect," and that the Fourth Amendment allows for reasonable mistakes of fact, the Chief Justice went on to explain that the Fourth Amendment reasonableness inquiry applies to mistakes of law just as it applies to mistakes of fact:

> [R]easonable men make mistakes of law, too, and such mistakes are no less compatible with the concept of reasonable suspicion [than mistakes of fact]. Reasonable suspicion arises from the combination of an officer's understanding of the facts and his understanding of the relevant law. The officer may be reasonably mistaken on either ground. Whether the facts turn out to be not what was thought, or the law turns out to be not what was thought, the result is the same: The facts are outside the scope of the law. There is no reason, under the text of the Fourth Amendment or our precedents, why this same result should be acceptable when reached by way of a reasonable mistake of fact, but not when reached by way of a similarly reasonable mistake of law. (*Id*. at p. 62)

In so holding, the majority added, this "inquiry is not as forgiving as the one employed in the distinct context of deciding whether an officer is entitled to qualified immunity for a constitutional or statutory violation." (*Heien*, *supra*, 574 U.S.

-10-

at p. 67.)  Based on the language of the North Carolina statute, the Court concluded that the officer's error of law was objectively reasonable and thus provided the officer with reasonable suspicion to justify the traffic stop.  (*Id.* at p. 68.)

Justice Kagan, joined by Justice Ginsburg, wrote a concurrence that contained several important points, giving context to the majority's observation that the "inquiry is not as forgiving[.]" Critical to her concurrence was her belief that erroneous interpretations of the law will be reasonable only when the law at issue is "'so doubtful in construction' that a reasonable judge could agree with the officer's view."  (*Heien*, *supra*, 574 U.S. at p. 70, internal citation omitted.)  Thus, "[i]f the statute is genuinely ambiguous, such that overturning the officer's judgment requires hard interpretive work, then the officer has made a reasonable mistake.  But if not, not."  (*Ibid*.)  Such cases must necessarily involve a "really difficult" or "very hard question of statutory interpretation" and will thus be "exceedingly rare." (*Ibid*.)

Justice Kagan's concurring observation of an objectively reasonable mistake of law is instructive in deciding the issue in this case.  A number of state and federal courts have adopted or acknowledged this view.  (See *Jones v. Commonwealth* (Va. 2019) 836 S.E.2d 710, 713 (citing Justice Kagan's concurrence for proposition that the statute must be "genuinely ambiguous" and require "hard interpretative work" to find a reasonable mistake of law); *Harris v. State* (Ga. 2019) 810 S.E.2d 660, 663 (same); *State v. Stoll* (Ariz. 2016) 370 P.3d 1130, 1134 (same); *United States v. Stanbridge* (7th Cir. 2016) 813 F.3d 1032, 1037 (same); *State v.*

-11-

*Eldridge* (N.C. 2016) 790 S.E.2d 740, 743-744 (same); *People v. Gaytan* (Ill. 2015) 32 N.E.3d 641, 652 (same); *State v. Hurley* (Vt. 2015) 117 A.3d 433, 441 (noting Justice Kagan's view that "the bar is high in cases in which a stop is predicated on a mistake of law"); *State v. Houghton* (Wis. 2015) 868 N.W.2d 143, 158-160 (noting Justice Kagan's view that objectively reasonable mistakes of law will be "exceedingly rare").)

Here, while there is no published case law addressing or interpreting FMC section 13-109, its language is straightforward. It requires no "hard interpretative work," nor is it "genuinely ambiguous." Instead, the code says what it means – that a <u>person</u> shall not sit or stand upon the street so as to block passage. Simply put, where the statute is not ambiguous, "`*Heien* does not support the proposition that a police officer acts in an objectively reasonable manner by misinterpreting an unambiguous statute." (*United States v. Stanbridge, supra*, 813 F.3d at p. 1037.) It was unreasonable for Officer Khan to suspect appellant's conduct was illegal under FMC section 13-109. Thus, appellant's arrest for violating that provision of the Fresno Municipal Code lacked probable cause. Likewise, appellant's failure to heed the officer's commands cannot support a violation of section 148 for delaying or obstructing the officer in his duty, because the officer was acting unlawfully.

We emphasize the prosecution's choice to proceed *solely* on a theory of violating FMC section 13-109, constrains our review under the sufficiency-of-the-evidence test.[6] On request of the

---

[6] The concept that probable cause for an arrest exists so long as the evidence may arguably give rise to probable cause to arrest on <u>any</u> criminal statute (see *Davenpeck v. Alford* (2004) 543 U.S. 146, 153), is contrary to the sufficiency-

-12-

parties, the trial court took judicial notice of FMC section 13-109. There was no other evidence elicited in the trial record to support Officer Khan's arrest of appellant. The prosecutor argued to the jury that the officer saw a "clear" violation of FMC section 13-109, while appellant countered he was unlawfully arrested because he did not violate FMC section 13-109. Under the narrow circumstances of this case, we find that it was not objectively reasonable for Officer Kahn to read FMC section 13-109 expansively, giving rise to probable cause to arrest appellant for a violation of it. (See *Atwater v. Lago Vista, supra,* 532 U.S. at p. 354; *People* v. *McKay* (2002) 27 Cal.4th 601 607; *People v. Gomez* (2004) 117 Cal.App.4th 531, 538-539.)

## IV

## DISPOSITION

The judgment is reversed.

Dated this _____ day of May, 2020.

_____
Hon. D. Tyler Tharpe
Judge of the Appellate Division of
the Fresno County Superior Court

WE CONCUR,

_____
Hon. F. Brian Alvarez
Acting Presiding Judge of the
Appellate Division of the Fresno
County Superior Court

---

of-the-evidence test applicable in this case, where we review "record evidence" put before the jury. (*Jackson v. Virginia* (1979) 443 U.S. 301, 318; see *People v. Johnson, supra*, 26 Cal.3d at p. 562 [we review "the whole record" in the light most favorable to the judgment].)

-13-

_____
Hon. Kristi Culver Kapetan
Judge of the Appellate Division of
the Fresno County Superior Court